PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-1067/2604
_____

DAWN BALL,

Appellant

v.

DR. FAMIGLIO; GLORIA DIGGAN, R.N.; NURSE
DILLELA; VANESSA NICOLA, HYGENIST; NELMS,
DENTIST; NURSE GREEN; BRIAN MENCH, NURSE;
MRS. MENCH; MS. JARRET; MS. BROWN; MS. WELL
CHANCE; NURSE BOYER; P.A. EGAN; P.A.
HIMELSBACK; ERICA STROUP; EYE DOCTOR; MS.
JOHNSON; MAJOR SMITH; DR. FABIAN; CAPTAIN
PINARD; MS. GAMBLE; DR. WOODS; DR.
SHIPTOWSKI; SGT. RAGAR; SGT. SAAR; SGT.
JOHNSON; LT. BOYER; NURSE CANDY OTT

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 08-cv-700)
District Judge:  Hon. Yvette Kane

_____

Argued
May 30, 2013

Before:  JORDAN, VANASKIE and COWEN, *Circuit Judges*.

(Filed:  August 9, 2013)
_____

Dawn Marie Ball  (#OL-0342)
Muncy SCI
P. O. Box 180
Muncy, PA   17756
    *Pro Se Appellant*

Kathryn M. Kenyon   [ARGUED]
Pietragallo, Gordon, Alfano, Bosick & Raspanti
301 Grant Street – 38th Fl.
Pittsburgh, PA   15219
    *Counsel for Appellees Famiglio, Egan, Himelsback,
    Stroup, Eye Doctor, Johnson, and Fabian*

Jaime B. Boyd
Raymond W. Dorian   [ARGUED]
Pennsylvania Dept. of Corrections
Office of Chief Counsel
1920 Technology Pkwy.
Mechanicsburg, PA   17050
    *Counsel for Appellees Diggan*

Alan S. Gold   [ARGUED]
Gold & Ferrante
261 Old York Road - #526
Jenkintown, PA   19046
        *Counsel for Appellees Woods, Shiptowski*

Matthew E. Carey   [ARGUED]
Thomas J. Derbesy   [ARGUED]
Richard H. Frankel
Drexel University
Earle Mack School of Law
3320 Market Street
Philadelphia, PA  19104
        *Court Appointed Amicus Curiae*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Dawn Ball, an inmate in the Restricted Housing Unit at the Pennsylvania State Correctional Institution Muncy ("SCI-Muncy"), appeals the denial of her motion for a preliminary injunction and the grant of summary judgment to the defendants in this *pro se* action she brought pursuant to 42 U.S.C. § 1983, in which she alleges deliberate indifference to her medical needs in violation of the Eighth Amendment. Because Ball has asked to proceed *in forma pauperis* ("IFP") on appeal, we must determine whether she is eligible for that status under the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996).   For the following reasons, we conclude that she is not eligible for IFP

status because she had accrued three "strikes" under the PLRA and was not in imminent danger of serious physical injury when she brought these appeals. We will therefore deny her motion to proceed IFP and will also deny without prejudice her motion for appointment of counsel.

## I. BACKGROUND

### A. Statutory Background

The federal IFP statute, enacted in 1892 and currently codified at 28 U.S.C. § 1915, "is designed to ensure that indigent litigants have meaningful access to the federal courts," *Neitzke v. Williams*, 490 U.S. 319, 324 (1989), and that "'no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States, solely because ... poverty makes it impossible ... to pay or secure the costs' of litigation." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (alterations in original) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)). Pertinent here, the statute allows "[a] prisoner seeking to bring a civil action or [to] appeal a judgment in a civil action" to proceed "without prepayment of fees or security therefor," if she can demonstrate that she is unable to pay such fees. 28 U.S.C. § 1915(a)(2).

Congress recognized, however, that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id.* (internal quotation marks omitted). And indeed, despite efforts to curtail the opportunity for abusive filings that free court access can provide, "[p]risoner litigation continues to

4

account for an outsized share of filings in federal district courts." *Jones v. Bock*, 549 U.S. 199, 203 (2007) (internal quotation marks omitted). In 1996, in response to the tide of "substantively meritless prisoner claims that have swamped the federal courts," *Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir. 2000) (original emphasis omitted), Congress enacted the PLRA to "filter out the bad claims and facilitate consideration of the good," *Bock*, 549 U.S. at 204.

The PLRA sought to "reduce the quantity and improve the quality of prisoner suits," *Porter v. Nussle*, 534 U.S. 516, 524 (2002), in three main ways. First, it introduced an exhaustion requirement, which bars an action by a prisoner complaining of prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Second, it established "prescreening" provisions that require a court to dismiss an action or appeal sua sponte if the action is "frivolous" or "malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. §§ 1915(e)(2)(B)(i), (e)(2)(B)(ii), 1915A(b); 42 U.S.C. § 1997e(c). Third, it created a so-called "three strikes" rule to limit the number of lawsuits brought by prisoners with a history of meritless litigation. Under that provision, the language of which tracks that of the prescreening provisions, a prisoner seeking IFP status may not

> bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the

5

United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). But "[i]t is important to note that § 1915(g) does not block a prisoner's access to the federal courts. It only denies the prisoner the privilege of filing before he has acquired the necessary filing fee." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001) (en banc).[1]

### B.    Facts[2]

Ball is an indigent inmate at SCI-Muncy who suffers from a variety of physical and mental ailments. Among her physical afflictions, she has "serious back problems" and osteoarthritis (App. at 92, 100), she fears that she is losing her vision due to a lack of medical treatment for her eyes, and she

---

[1] The prisoner is still required to pay the costs of her action or appeal, a departure from pre-PLRA practice, *see Denton v. Hernandez*, 504 U.S. 25, 27 (1992), paying an initial partial fee followed by installment payments until the entire fee is paid. 28 U.S.C. § 1915(b)(1).

[2] We set forth the facts in the light most favorable to Ball because "th[e] initial assessment of the *in forma pauperis* plaintiff's factual allegations must be weighted in favor of the plaintiff." *Denton*, 504 U.S. at 32. However, the Supreme Court has, in the IFP context, "reject[ed] the notion that a court must accept as having an arguable basis in fact all allegations that cannot be rebutted by judicially noticeable facts." *Id.* (citation and internal quotation marks omitted).

is asthmatic.  Also, by her own account, she suffers from several mental illnesses that include "PTSD, disassociative [sic] disorder, ... phobias, agoraphobia, severe anxiety, ... cognitive problems and disorders, ... paranoid-schizophrenic, constant worry, frightened[,] scared, ... bipolar, manic depressive, [and] mood swings that are so severe, can't think clearly ... ."  *Ball v. SCI Muncy*, No. 08-cv-700 (M.D. Pa.) (Doc. 216 ("Magistrate Judge's Report"), pg. 1) (internal quotation marks omitted).

Ball's claims in the present action fall into several broad categories.  First, she alleges that she sustained burns, bruises, cuts, and contusions at the hands of prison officials, and that she was subsequently denied medical attention for those injuries.  Second, she complains that Dr. Famiglio "allows the prison officials to take her mattress [and] refuse her needed meds" (App. at 100), and that prison officials have also denied her the use of her wheelchair and cane, exacerbating the pain caused by her back problems and degenerative joint disease.  Third, Ball alleges that her vision is deteriorating due to a lack of proper medical treatment for her eyes.  Fourth, she alleges that she is "living in a room with dangerous black mold" (App. at 94) and that Dr. Famiglio is "continually allowing the prison officials to spray her with o/c (mace)" (*id.* at 100), both of which endanger her health because she suffers from chronic asthma.  More generally, Ball alleges that prison officials have subjected her to mistreatment in retaliation for the many lawsuits she has filed against SCI-Muncy and its personnel, and that Dr. Famiglio denied her medical treatment because she refused his romantic advances.

7

Appellees deny all of Ball's allegations, asserting that "Ms. Ball ... has no need for such [medical] care," (App. at 88) and that she "has available to her emergency medical care," (*id.* at 89). They also state that Ball has been described as a "possible malingerer," that she "feigns blindness," and that she "claims back pain ... and numerous other conditions that have not been supported by any objective findings or examinations." (App. at 88-89.) They also allege that she frequently refuses to leave her cell to see medical caregivers.

### C. Procedural History

#### 1. Litigation Prior to the Present Appeals[3]

The present action is part of a larger pattern of repeated and entirely unsuccessful litigation brought by Ball in the United States District Court for the Middle District of Pennsylvania. We discuss only those actions that are relevant to the appeals now before us.

The germane history began in March 2008, with a complaint filed against SCI-Muncy in which Ball alleged physical assault, denial of medical treatment, and other mistreatment. *See Ball v. SCI Muncy*, No. 08-cv-0391 (M.D. Pa.). The District Court dismissed that action in December 2008 pursuant to Federal Rule of Civil Procedure 12(b)(6), noting that Ball's failure to exhaust her administrative remedies, as required by the PLRA, was stated in her

---

[3] All of Ball's actions discussed in this opinion were filed pursuant to 42 U.S.C. § 1983.

8

complaint. *See id.* (Doc. 36). We affirmed that dismissal in July 2010. *See id.* (Doc. 44).

Ball filed a second civil action in May 2009, claiming that her constitutional rights were violated because she was not allowed to participate by phone in a hearing on a paternity matter she had filed in state court. *See Ball v. Hartman*, No. 09-cv-0844, 2010 WL 597401 (M.D. Pa. Feb. 16, 2010). In January 2010, the District Court granted the motion to dismiss filed by one of the defendants, observing that "[t]he complaint lacks any allegations against [the defendant], who is not a prison employee, but rather, a court administrator in Northhampton County." *See Ball v. Hartman*, No. 09-cv-0844, 2010 WL 146319, at *5-*7 (M.D. Pa. Jan. 11, 2010).[4] In February 2010, the Court then dismissed the remaining claims pursuant to Rule 12(b)(6) on the grounds that the defendants were not personally involved in the alleged mistreatment and could not be sued in their supervisory capacity under § 1983, and that Ball had not pled an injury-in-fact and therefore lacked standing. *See Hartman*, 2010 WL 597401, at *2-*3.[5] We affirmed the District Court's

---

[4] The District Court also explained that, "even if the complaint contained factual allegations against [the defendant], she would be immune from suit," *Ball v. Hartman*, 09-cv-0844, 2010 WL 146319, at *6 (M.D. Pa. Jan. 11, 2010), in both her official capacity (pursuant to the Eleventh Amendment) as well as her individual capacity (in accordance with the doctrine of quasi-official immunity), *id.* at *6-*7.

[5] The orders accompanying the *Hartman* opinions granted the defendants' motions to dismiss without stating the reason for doing so. The second order did state that any

9

judgment in October 2010. *See Ball v. Hartman*, 396 F. App'x 823, 825 (3d Cir. 2010) (per curiam).

In June 2011, Ball filed another lawsuit, this time against the state court judge who had ordered her transferred to SCI-Muncy. Ball alleged that the judge ordered the transfer with malicious intent. *See Ball v. Butts*, No. 11-cv-1068 (M.D. Pa.). The District Court dismissed that case pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) because the defendant was entitled to absolute immunity. *See Butts*, No. 11-cv-1068 (Doc. 8). We dismissed the appeal, stating that it was frivolous because it "lack[ed] an arguable basis either in law or in fact," *Ball v. Butts*, 445 F. App'x 457, 457 (3d Cir. 2011) (nonprecedential), due to the absolute immunity of the defendant judge and the lack of any evidence of malice.

Ball filed many other lawsuits in the District Court, all of which followed the same basic pattern as *SCI Muncy*, *Hartman*, and *Butts*. She has a total of more than thirty

_____

appeal from the order "is deemed frivolous and not in good faith," a certification made pursuant to 28 U.S.C. § 1915(a)(3). *Ball v. Hartman*, No. 09-cv-0844, 2010 WL 597401, *4 (M.D. Pa. Feb. 16, 2010). It nevertheless appears that Ball's *Hartman* complaint was dismissed for failure to state a claim, because the Court characterized the personal involvement of a § 1983 defendant as an element of the claim. *See id.* at *2 (listing "conduct complained of ... committed by a person acting under color of state law" as one of the "essential elements" of a § 1983 claim); *Hartman*, 2010 WL 146319, at *6 ("The complaint lacks any allegations against [the defendant], who is not a prison employee, but rather, a court administrator in Northhampton County.").

10

actions to her name as of the date of this opinion. All but five of them have been dismissed by the District Court, and those remaining five are still pending. As a result of the dismissals, Ball currently has twenty-two appeals before us in addition to the present appeals.[6]

### 2. *The Present Appeals*

Ball commenced this particular lawsuit on April 14, 2008, and filed an amended complaint on March 12, 2010. The amended complaint endeavors to advance Eighth Amendment claims of deliberate indifference to Ball's medical needs based on the quality of care that she received between 2006 and 2008. Ball also filed a motion for a preliminary injunction, which the District Court denied by order dated December 8, 2011. Ball filed a timely notice of appeal.[7]

---

[6] That does not include two additional appeals related to the case from which the present appeals arise, Nos. 10-1700, 11-2629. We decided the appeal at 10-1700, affirming the District Court's denial of another of Ball's motions for a preliminary injunction (not the one presently at issue). *See Ball v. Dr. Famiglio et al.*, 396 F. App'x 836 (3d Cir. 2010) (per curiam). The appeal at 11-2629 was dismissed for failure to prosecute.

[7] Her notice of appeal was filed on January 4, 2012, and her appeal was docketed on January 17, 2012 as No. 12-1067. As discussed in Part II.A.3, *infra*, the date an appeal commences is important for determining whether a dismissal counts as a PLRA strike for purposes of that appeal.

Ball originally sued some twenty-eight corrections officers, medical personnel, and contract health providers employed or providing services at SCI-Muncy. Through the process of pretrial litigation, the number of defendants was reduced, so that the complaint named thirteen department of corrections medical and correctional staff as defendants, along with five contract health providers who provided medical treatment to Ball. In response to motions by the defendants, the District Court also dismissed a number of claims from the lawsuit, leaving only claims for inadequate medical treatment.

On August 15, 2011, the remaining defendants filed motions for summary judgment. The assigned Magistrate Judge subsequently issued a Report and Recommendation that summary judgment be granted based on Ball's failure to exhaust her administrative remedies. *See Ball v. SCI Muncy*, No. 08-cv-700, (Doc. 216). On May 22, 2012, the District Court adopted the recommendation and granted summary judgment to the defendants with respect to all of Ball's claims. *See Ball v. SCI Muncy*, No. 08-cv-700 (Doc. 239).

Ball again timely appealed,[8] and the two appeals – the first from the denial of a preliminary injunction and the second from the rulings on the merits – were consolidated. On June 20, 2012, Ball filed a motion to proceed IFP as well as two motions asserting that she was in imminent danger of serious physical injury.[9] She also filed a motion for

---

[8] Her notice of appeal was filed on June 4, 2012, and her appeal was docketed June 8, 2012 as No. 12-2604.

[9] In August 2012, the District Court revoked Ball's IFP status on the grounds that she had accrued three strikes,

12

appointment of counsel. Those motions were referred to this merits panel, and amicus counsel was appointed.[10]

## II.    DISCUSSION[11]

To date, Ball has accumulated more than twenty-five dismissals of actions and appeals by the District Court and this Court. How to consider those dismissals for purposes of the PLRA is what is principally at issue now. As discussed above, under the PLRA's "three strikes" provision, a prisoner may not "bring a civil action or appeal a judgment in a civil action or proceeding" if the prisoner has, on three or more prior occasions, had an action or appeal "dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under

counting its own dismissals in *Hartman* and *Butts* and our dismissal of the *Butts* appeal. *See Ball v. Hummel*, No. 12-cv-0814, 2012 WL 3614045, at *1 (M.D. Pa. Aug. 21, 2012).

[10] Our Amicus is the Appellate Litigation Clinic of the Earle Mack School of Law at Drexel University, for whose diligent and expert assistance we express sincere gratitude.

[11] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), (a)(4). We have jurisdiction under 28 U.S.C. § 1291. Because the issues raised in this appeal arise from Ball's motion to proceed IFP, and the District Court did not address her IFP status in this case, there is no district court order under review. However, this case presents questions of law regarding the proper interpretation of 28 U.S.C. § 1915(g), which would be subject to plenary review in any event. *Gibbs v. Cross*, 160 F.3d 962, 964 (3d Cir. 1998).

imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The District Court did not dispose of Ball's claims in this case under the three strikes provision, but rather based on Ball's failure to exhaust her administrative remedies, as required under another provision of the PLRA, *see* 42 U.S.C. § 1997e(a). However, in her appeal to us, Ball has requested permission to proceed IFP, which requires that we determine whether she is eligible for that status in light of the three strikes rule.

Given the character of previous dismissals in Ball's legal proceedings, this appeal necessitates a determination of whether a dismissal for failure to exhaust administrative remedies counts as a PLRA strike, and whether dismissal on the basis of absolute immunity qualifies as a PLRA strike. Because we conclude that Ball had three strikes for purposes of the PLRA at the time she filed the present appeals, we must also determine whether she may still proceed IFP based on imminent danger of serious physical injury. We take up each of those questions in turn.

### A. *Application of the PLRA's Three Strikes Rule*

#### 1. *Dismissals for Failure to Exhaust*

The PLRA provides that "[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Bock*, 549 U.S. at 204. It also "has the potential to reduce the number of inmate suits, and also to improve the

quality of suits that are filed by producing a useful administrative record." *Id.*

In their "attempt[s] to implement the exhaustion requirement, some lower courts have imposed procedural rules that have become the subject of varying levels of disagreement among the federal courts of appeals." *Id.* One issue on which the circuits are split is the interaction of the PLRA's exhaustion requirement and the three strikes rule. The majority view seems to be that, based on the plain language of the three strikes provision, which does not mention exhaustion, dismissal for failure to exhaust does not count as a PLRA strike. *See Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010) ("[N]either the dismissal of a complaint in its entirety for failure to exhaust nor the dismissal of unexhausted claims from an action containing other viable claims constitutes a strike under § 1915(g)."); *Owens v. Isaac*, 487 F.3d 561, 563 (8th Cir. 2007) (per curiam) ("The first case was dismissed without prejudice for failure to exhaust administrative remedies; such a dismissal is not a strike under section 1915(g)."); *Green v. Young*, 454 F.3d 405, 409 (4th Cir. 2006) ("[R]outine dismissal on exhaustion grounds is not a strike for purposes of the PLRA."); *Snider v. Melindez*, 199 F.3d 108, 115 (2d Cir. 1999) ("[D]ismissal by reason of a remediable failure to exhaust should not count as a strike."). Courts following the majority approach treat failure to exhaust as an affirmative defense, so that "[a] prisoner's failure to exhaust administrative remedies is statutorily distinct from his failure to state a claim upon which relief may be granted." *Turley*, 625 F.3d at 1013.

However, there are decisions holding that failure to exhaust constitutes a strike, notwithstanding that exhaustion

is not mentioned in §1915(g). The reasoning is that an action "that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted," which is a specified ground for a strike. *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998), *abrogated in part by Jones v. Bock*, 549 U.S. 199 (2007). Courts following that line start from the premise that, due to the mandatory nature of exhaustion, it is an "essential allegation of a prisoner's claim." *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1209 (10th Cir. 2003), *abrogated in part by Jones v. Bock*, 549 U.S. 199 (2007). They thus "conclude that § 1997e(a) imposes a pleading requirement on the prisoner," so that if the plaintiff fails to plead exhaustion, the court may dismiss the complaint on a Rule 12(b)(6) motion. *Id.* at 1210. That minority view appears also to be based, in part, on the observation that exhaustion should not be seen as an affirmative defense "because it cannot be waived." *Id.* at 1209 (citing Fed. R. Civ. P. 8(c) ("Failure to plead an affirmative defense results in a waiver of that defense.")).[12]

The United States Court of Appeals for the District of Columbia Circuit follows neither the majority nor the

---

[12] That conclusion is at odds with the Supreme Court's subsequent holding in *Jones v. Bock*, 549 U.S. 199 (2007), that "failure to exhaust is an affirmative defense under the PLRA, and … inmates are not required to specially plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. However, *Bock* addressed only the PLRA's screening requirements, and not the three strikes rule, and, as discussed below, left open the possibility that failure to exhaust could be a basis for dismissal for failure to state a claim.

minority approach. In *Thompson v. Drug Enforcement Administration*, it suggested instead that, "[b]ecause there is no categorical answer to the question whether failure to exhaust administrative remedies counts as failure to state a claim for Rule 12(b)(6) purposes, the question likewise has no categorical answer under section 1915(g), the language of which Congress clearly modeled on Rule 12(b)(6)." 492 F.3d 428, 438 (D.C. Cir. 2007). The *Thompson* Court reasoned that, "if a particular statute requires the plaintiff to plead exhaustion and the plaintiff fails to do so, the court may dismiss the complaint on a Rule 12(b)(6) motion," but that, "even when failure to exhaust is treated as an affirmative defense, it may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face." *Id.* The D.C. Circuit has thus chosen to establish a "bright-line rule that avoids the need to relitigate past cases": "if the court dismisses an unexhausted complaint on a Rule 12(b)(6) motion or if it dismisses the complaint *sua sponte* and expressly declares that the complaint fails to state a claim, the dismissal counts as a strike." *Id.*

We have not previously addressed the issue of how exhaustion may relate to the three strikes rule, but we did consider two related issues in *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). In that case, the district court dismissed a prisoner's complaint before the defendants were served because the prisoner had not set forth any steps he had taken to exhaust administrative remedies. He argued on appeal that failure to exhaust is an affirmative defense that must be pleaded and proven by the defendants in a PLRA action, and he relied in part on *Williams v. Runyon*, 130 F.3d 568 (3d Cir. 1997), a Title VII case in which we stated that "failure to exhaust administrative remedies is an affirmative defense in

17

the nature of statute[s] of limitations." *Ray,* 285 F.3d at 292 (quoting *Williams*, 130 F.3d at 573) (internal quotation marks omitted). We noted in *Ray* that the majority of appellate courts that had considered the issue had held that the PLRA's exhaustion requirement is an affirmative defense. *See id.* at 293 (collecting cases). We also observed that "considerations of policy [and] fairness" come into play when categorizing a pleading requirement as an affirmative defense, *id.* at 295 (alteration in original) (internal quotation marks omitted), and that "it appears that it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion." *Id.*[13] We thus "join[ed] the many other circuits that have held that failure to exhaust is an affirmative defense to be pleaded by the defendant." *Id.*

We also considered in *Ray* whether failure to exhaust constituted grounds for a court's sua sponte dismissal pursuant to the PLRA's prescreening provision, 42 U.S.C. § 1997e(c). As noted earlier, *supra* Part II.A, that provision permits dismissal of an action or claim that is "frivolous, malicious, fails to state a claim upon which relief can be

---

[13] The Tenth Circuit in *Steele* explicitly rejected that part of our reasoning in *Ray*. It observed that "[a] showing of exhaustion does not rely solely on the maintenance of an efficient filing and retrieval system" and that "[t]he prisoner outlines his own grievance in the prison administrative system and frames his allegations in federal court." *Steele*, 355 F.3d at 1210. As a result, the Court concluded that "it is the prisoner who can best assert the relationship between his administrative grievance and court filing," *id.*, so that there is "no inequity in placing the burden of pleading exhaustion on the prisoner," *id.* at 1209.

granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c). Applying the principle of "*expressio unius est exclusio alterius* – when a statute specifically enumerates some categories, it impliedly excludes others," *Ray*, 285 F.3d at 296, we said that "[n]otably absent from the list is any reference to failure to exhaust." *Id.* We also observed that the final sentence of § 1997e(c)(2) states that "'the court may dismiss the underlying claim ... without first requiring the exhaustion of administrative remedies,' [which] shows that Congress had not forgotten about the need for exhaustion, but chose not to include failure to exhaust among the grounds for which the court could dismiss sua sponte." *Id.* (quoting 42 U.S.C. § 1997e(c)(2)). And we reasoned that "[t]he statutory structure also belies any possibility that a failure to exhaust is included in [§ 1997e](c)(1)'s broad rubric of 'failure to state a claim upon which relief can be granted.'" *Id.* at 296 n.9; *accord Snider*, 199 F.3d at 112 (concluding that "fail[ure] to state a claim as used in Section[] 1997e(c) ... of the PLRA does not include failure to exhaust administrative remedies" (first alteration in original) (internal quotation marks omitted)). Based on the foregoing, we concluded that "Congress did not intend to include failure to exhaust among the categories justifying sua sponte dismissal," *Ray*, 285 F.3d at 296, either as an independent ground or under the guise of failure to state a claim.

Our holdings in *Ray*, and the reasoning on which they were based, would seem to compel us to follow the majority rule and conclude that dismissal for failure to exhaust does not constitute a strike under the PLRA. Like the prescreening provisions, the language of § 1915(g) does not include failure to exhaust in the list of enumerated strike grounds, indicating

19

that Congress did not intend for a dismissal based on exhaustion to count as a strike. The majority view is also consistent with our conclusion in *Ray* that failure to exhaust is an affirmative defense, rather than an element of a prisoner's claim, and that it does not constitute a basis for sua sponte dismissal for failure to state a claim.

Despite that, however, dictum in *Jones v. Bock* suggests that we should follow the D.C. Circuit's approach and adopt a clear but flexible rule.[14] In *Bock*, even as it held that exhaustion is an affirmative defense, *see supra* note 12, the Supreme Court added that "that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Bock*, 549 U.S. at 216. The Court observed that "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief," and that "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." *Id.* at 215. For example, if the allegations in a complaint "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[,] [but] that does not make the statute of limitations any less an affirmative

---

[14] We have previously explained that "we should not idly ignore considered statements the Supreme Court makes in dicta" because the Court "uses dicta to help control and influence the many issues it cannot decide because of its limited docket," and because ignoring it "increase[s] the disparity" among the Courts of Appeals. *In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000).

20

defense." *Id.* The D.C. Circuit's rule, which was based on that reasoning in *Bock*, admits the possibility that "even when failure to exhaust is treated as an affirmative defense, it may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face." *Thompson*, 492 F.3d at 438. That approach is also consistent with the law of this Circuit concerning affirmative defenses and motions to dismiss. *See Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face.").[15] *Cf. Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (noting that "the law of this Circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." (internal quotation marks omitted)).[16]

---

[15] The *Bock* Court cited *Leveto v. Lapina*, 258 F.3d 156 (3d Cir. 2001), in support of its statement that an affirmative defense, such as failure to exhaust, may be the basis of a dismissal for failure to state a claim. *See Bock*, 549 U.S. at 215.

[16] As we noted in *Robinson*, "[t]he 'Third Circuit Rule' dates back at least to 1948 when we recognized ... that affirmative defenses are ordinarily pleaded pursuant to Fed. R. Civ. P. 8(c), but that [a] defense could be raised in other ways." *Robinson v. Johnson*, 313 F.3d 128, 135 n.3 (3d Cir. 2002) (citing *Hartmann v. Time, Inc.,* 166 F.2d 127, 139 (3d Cir. 1947)). Since that time, we have acknowledged that a number of affirmative defenses that are not listed in Rule 12(b) could still be made by motion, provided that the basis of the defense was apparent on the face of the complaint.

We thus adopt the following rule as it relates to exhaustion and PLRA strikes: dismissal based on a prisoner's failure to exhaust administrative remedies does not constitute a PLRA strike, unless a court explicitly and correctly concludes that the complaint reveals the exhaustion defense on its face and the court then dismisses the unexhausted complaint for failure to state a claim. The first part of the rule – pertaining to cases in which the exhaustion defense is not apparent in the complaint – is likely to cover "the majority of cases ... [so that] the defense will not be raised on a Rule 12(b)(6) motion and the dismissal will not count as a strike." *Thompson*, 492 F.3d at 438. The second part – which applies when a court has correctly determined that the exhaustion defense is apparent on the face of the complaint – follows from the statutory text of § 1915(g) and our own "Third Circuit Rule." "When a court dismisses an unexhausted complaint under Rule 12(b)(6), thus concluding that the

---

*See, e.g.*, *Rycoline Prods., Inc. v. C & W Unltd.,* 109 F.3d 883, 886 (3d Cir. 1997) (affirmative defense must be apparent on the face of the complaint to be subject to a Rule 12(b)(6) motion to dismiss); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.1 (3d Cir.1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading."); *Williams v. Murdoch,* 330 F.2d 745, 749 (3d Cir. 1964) (affirmative defense of res judicata may be raised by a motion to dismiss or by an answer).

complaint fails to state a claim, section 1915(g)'s plain text compels us to count that case as a strike." *Id.*[17]

---

[17] The second part of the rule requires that the dismissal based on failure to exhaust, pursuant to Rule 12(b)(6), be with prejudice. "We assume that Congress is aware of existing law when it passes legislation," *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990), and Congress used the language of Rule 12(b)(6) in the PLRA's three strikes provision. *See* 28 U.S.C. § 1915(g) (strike accrues on dismissal of an action that "fails to state a claim upon which relief may be granted"). A dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be a judgment on the merits unless otherwise specified. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits." (citation and internal quotation marks omitted)). "It follows that the type of prior dismissal for failure to state a claim contemplated by § 1915(g) is one that constituted an adjudication on the merits and prejudiced the filing of a subsequent complaint with the same allegations." *McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009). By contrast, a dismissal for failure to exhaust without prejudice is not an adjudication on the merits. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("[D]ismissal ... without prejudice is a dismissal that does not operat[e] as an adjudication upon the merits ... ." (alterations in original) (citing and quoting Fed. R. Civ. P. 41(a)(1)) (internal quotation marks omitted)). Consequently, a dismissal for failure to state a claim on exhaustion grounds without prejudice "does not fall within the plain and unambiguous meaning of § 1915(g)'s unqualified phrase 'dismissed ... [for]

23

## 2. *Dismissals Due to Absolute Immunity*

The PLRA's prescreening provisions require a court to dismiss an action or an appeal at any time the court determines that the plaintiff "seeks monetary relief" from "a defendant who is immune from such relief." 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b)(2); 42 U.S.C. § 1997e(c)(1). But, like failure to exhaust, immunity is not one of the enumerated grounds for a strike under § 1915(g), which indicates that Congress did not intend for dismissal on immunity grounds to count as a strike. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." (alteration in original) (citation and internal quotation marks omitted)). Also, immunity is an affirmative defense, so that a prisoner's failure to plead that the defendant was not immune would not normally provide a basis for dismissal for failure to state a claim. *See Ray*, 285 F.3d at 297 (noting that the Supreme Court has criticized the creation of heightened pleading standards in the PLRA context). Thus, it would seem clear that a dismissal due to the immunity of the defendant does not, on its own, count as a PLRA strike. *See Thompson*, 492 F.3d at 439 (declining to treat all dismissals under 28 U.S.C. § 1915A as strikes, in part

---

fail[ure] to state a claim'" and "does not count as a strike." *McLean*, 566 F.3d at 397 (alterations in original). The District Court did not state that any of the dismissals at issue in these appeals were without prejudice, and so they are presumed to be with prejudice, and they "operate[] as an adjudication on the merits." Fed. R. Civ. P. 41(b).

24

because that provision "requires dismissal of complaints that 'seek[ ] monetary relief from a defendant who is immune from such relief' – a  reason not covered by section 1915(g)" (quoting 28 U.S.C. § 1915A(b)(2))).

Again, however, affirmative defenses may be apparent on the face of a prisoner's complaint, and immunity could, like failure to exhaust, provide the basis of a dismissal pursuant to Rule 12(b)(6).  *See Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74-75 (2d Cir. 1998) (dismissing a complaint under Rule 12(b)(6) because "the complaint itself establishes the facts necessary to sustain defendant's immunity defense").   Under our Court's practice, then, immunity could in certain cases justify a dismissal that would count as a PLRA strike.  In addition, "[o]ne of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed on those defending a long drawn out lawsuit."  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).  For that reason, "[i]t is also well established that an affirmative defense of official immunity should be resolved as early as possible by the court ... ."  *Pani*, 152 F.3d at 75; *see also Vaughn v. U.S. Small Bus. Admin.*, 65 F.3d 1322, 1326 (6th Cir. 1995) ("To avoid imposing needless discovery costs upon government officials, the determination of qualified immunity must be made at an early stage in the litigation."). That suggests that, when a prisoner sues a defendant who is immune, the court should grant a pre-answer motion to dismiss based on the affirmative defense of immunity "without resort to summary judgment procedure, if the defense appears on the face of the complaint."  *Pani*, 152 F.3d at 74.

Some courts have gone further, suggesting that a dismissal based on immunity may be tantamount to a dismissal for frivolousness, which, like failure to state a claim, is an enumerated basis for a PLRA strike. *See, e.g.*, *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1178 (10th Cir. 2011) (construing a district court's dismissal to "mean that the immunity ground for dismissal was subsumed in frivolousness or appellant's failure to state a claim, because appellant *affirmatively asserted* facts showing that he could not meet the expropriation exception to [defendant's] immunity" (emphasis in original)). The Second Circuit has, in fact, decided that prisoner actions against defendants who enjoy absolute immunity are *per se* frivolous. *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("The IFP statute does not explicitly categorize as frivolous a claim dismissed by reason of judicial immunity, but we will: [a]ny claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of 28 U.S.C. § 1915(g).").

The text of the PLRA, however, treats dismissal for frivolousness as separate and distinct from dismissal on grounds of immunity. Like failure to state a claim, frivolousness is listed as a ground for prescreening dismissal, and it is listed separately and distinctly from dismissal due to immunity. *Compare* 28 U.S.C. § 1915(e)(2)(B)(i), *and id.* § 915A(b)(1) (requiring dismissal of an action that is frivolous), *with id.* § 1915(e)(2)(B)(iii), *and id.* § 1915A(b)(2) (dismissal on grounds that the defendant is immune from suit for monetary relief). And again like failure to state a claim, dismissal for frivolousness is an enumerated strike ground, *see id.* § 1915(g), while dismissal based on immunity is not. Moreover, to automatically treat a district court's dismissal on immunity grounds as one for frivolousness gives inadequate

26

deference to the district court. "[T]he district courts[] … are all too familiar with factually frivolous claims, [and] are in the best position to determine which cases fall into this category. Indeed, the [IFP] statute's instruction that an action may be dismissed if the court is satisfied that it is frivolous indicates that frivolousness is a decision entrusted to the discretion of the court entertaining the *in forma pauperis* petition." *Denton*, 504 U.S. at 33 (citation and internal quotation marks omitted).[18] We therefore decline to treat a

_____

[18] We note, however, that *Denton* preceded the enactment of the PLRA, and that, although it is up to the district court to make the frivolousness determination, the dismissal of a frivolous action is now mandatory. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i), 1915A(b)(1); 42 U.S.C. § 1997e(c). We also note that a district court may base its frivolousness determination either on its conclusion that "a claim [is] based on an indisputably meritless legal theory" or on a finding that "the complaint's factual allegations ... are clearly baseless," *Neitzke v. Williams*, 490 U.S 319, 327 (1989), and that we suggest deference only to the latter. *Cf. Denton*, 504 U.S. at 33 (concluding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible" and that "the district courts[] ... are in the best position to determine which cases fall into this category"); *Roman v. Jeffes*, 904 F.2d 192, 194 (3d Cir. 1990) (stating that "[o]ur review of a district court decision dismissing a complaint as frivolous is plenary" but acknowledging that a district court may base its frivolousness determination either on its conclusion that a claim is "based on an indisputably meritless legal theory" or on a finding that the complaint's "factual contentions are clearly baseless").

district court's dismissal due to the defendant's immunity as a *per se* dismissal for frivolousness for purposes of the PLRA's three strikes rule.[19]

[19] Although we do not think that a dismissal on the ground of immunity is *per se* a dismissal for frivolousness, we reiterate that the district courts are free to conclude that an action is frivolous because the defendant is immune – and to clearly state frivolousness as the reason for the dismissal. As the Second Circuit recognized in announcing its *per se* rule, when a defendant enjoys absolute judicial immunity, the action is quite likely frivolous. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority ... ."). But even judicial immunity has its limits. *See id.* at 356-57 (noting that a judge "will be subject to liability ... when he has acted in the clear absence of all jurisdiction" (internal quotation marks omitted)). And, more generally, a prisoner could have made a nonfrivolous claim by pleading facts that demonstrated that an exception to absolute immunity applied, or that the requirements of qualified immunity were not satisfied, even though the district court ultimately determined that the immunity defense remained intact and dismissed the complaint on that basis. *Cf. Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1178 (10th Cir. 2011) (observing that a claim against an immune defendant "could properly be dismissed by a district court sua sponte as frivolous" but only "if it [is] clear from the face of the complaint that the defendant was absolutely immune from suit and no further factual development was required").

Instead, we hold that dismissal based on the immunity of the defendant, whether absolute or qualified, does not constitute a PLRA strike, including a strike based on frivolousness, unless a court explicitly and correctly

We also emphasize that we may dismiss as frivolous an appeal of an action dismissed on immunity grounds. The PLRA counts each "occasion[]" on which "an action or appeal" is dismissed on one of the enumerated grounds as a separate strike, 28 U.S.C. § 1915(g), so that we may dismiss an appeal as frivolous, causing the prisoner to accrue a strike, *see Hafed*, 635 F.3d at 1179, even if the district court dismissed the action solely on grounds of immunity. And, in fact, a district court may certify that an appeal would not be taken in good faith, even if it dismissed the action on grounds other than frivolousness. *See* 28 U.S.C. § 1915(a)(3). Certainly, if the District Court certifies that an appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), and we dismiss the appeal under § 1915(e)(2)(B)(i) on the same grounds as those on which the District Court based its dismissal, then dismissal of the appeal should count as a strike. But even if the District Court did not certify that an appeal would be lacking a good faith basis, we may "consider the nature of the dismissal," *Hafed*, 635 F.3d at 1178, such that the appeal may itself be dismissed as frivolous. In the case of a district court's dismissal based on immunity, our determination that the appeal may be dismissed as frivolous would be proper when the prisoner "*affirmatively asserted* facts showing" that the defendant was immune from suit for a monetary remedy and that none of the exceptions to such immunity applied, so that he had no "legally valid claim." *Id.* (emphasis in original) (internal quotation marks omitted).

concludes that the complaint reveals the immunity defense on its face and dismisses the unexhausted complaint under Rule 12(b)(6) or expressly states that the ground for the dismissal is frivolousness.[20]

### 3. Other Questions of Strike Computation

Before applying the rules adopted in the previous sections to the dismissals of Ball's various actions, we address four more questions, first reviewing our recent answers to two questions of PLRA strike calculation and then resolving two additional questions. The first question is whether "unclear" dismissals can be counted as strikes for purposes of § 1915(g). We answered "no" to that inquiry earlier this year in *Byrd v. Shannon*, 715 F.3d 117 (3d Cir. 2013). *Byrd* concerned the dismissal of a prisoner's appeal pursuant to § 1915(e)(2)(B) because it was "without merit." *Id.* at 121 (internal quotation marks omitted). Confronted with that unclear dismissal, we said that

> a strike under § 1915(g) will accrue only if the entire action or appeal is (1) dismissed explicitly because it is "frivolous," "malicious," or "fails to state a claim" or (2) dismissed pursuant to a statutory provision or rule that is limited solely to dismissals for such reasons, including (but not necessarily limited to) 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i),

---

[20] As with a Rule 12(b)(6) dismissal based on failure to exhaust, a dismissal based on immunity must be with prejudice, if it is to count as a strike. *See supra* note 17.

1915(e)(2)(B)(ii), or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Id.* at 126. In announcing that rule, we rejected an alternative approach under which "courts are permitted to consider the nature of the dismissal and determine whether the dismissal fits within the language of § 1915(g)," because we felt that such an approach would "open the door to more litigation ... ." *Id.* Applying the rule, we concluded that our dismissal of the appeal in question did not constitute a strike, because "[t]he terms 'frivolous,' 'malicious,' or 'fails to state a claim' were not used to dismiss the appeal" and because "[s]ection 1915(e)(2)(B) is not limited to dismissals that are 'frivolous,' 'malicious,' or 'fail[] to state a claim.'" *Id.* (second alteration in original).

The second question is whether dismissal of some claims within an action on grounds that would constitute a strike, without dismissal of the entire action, causes the prisoner to accrue a strike. *Byrd* also settled that question, holding that "a strike under § 1915(g) will accrue only if the entire action or appeal" is dismissed on one of the enumerated grounds, or based on a statutory provision that limits dismissal to one or more of those grounds. *Id.*; *see also id.* at 125 ("We agree with the majority of our sister courts of appeals that § 1915(g) requires that a prisoner's entire action or appeal be dismissed on enumerated grounds in order for the dismissal to count as a strike."). That rule is consistent with the plain language of the PLRA's three strikes provision, which refers to dismissals of an "action or appeal," 28 U.S.C. § 1915(g), rather than the dismissal of individual claims.[21] It

---

[21] Other circuits have come to the same conclusion.

31

is also consistent with the Supreme Court's interpretation of the PLRA's exhaustion provision, 42 U.S.C. § 1997e(a). *See Bock*, 549 U.S. at 221 ("As a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad. [O]nly the bad claims are dismissed; the complaint as a whole is not. If Congress meant to depart from this norm, we would expect some indication of that, and we find none." (citation and internal quotation marks omitted)).

The third question is whether, on appeal, an affirmance of a dismissal (whether or not it was on grounds that would cause the prisoner to accrue a strike) counts as a separate strike. *Byrd* does not directly address that issue, and we have not previously resolved it, but we think the answer is clear. The PLRA three strikes provision speaks of possible strikes only in terms of "an action or appeal ... that was dismissed"

---

*See, e.g.*, *Tolbert v. Stevenson*, 635 F.3d 646, 651 (4th Cir. 2011) (holding that "§ 1915(g) requires that a prisoner's entire 'action or appeal' be dismissed on enumerated grounds in order to count as a strike"); *Turley v. Gaetz*, 625 F.3d 1005, 1009 (7th Cir. 2010) (holding that "a strike is incurred for an action dismissed *in its entirety* on one or more of the three enumerated grounds"); *Pointer v. Wilkinson*, 502 F.3d 369, 372-73 (6th Cir. 2007) (holding that "if some claims … were found to have merit, then the dismissal of other frivolous claims would not render the dismissal a strike" (internal quotation marks omitted)); *Thompson v. Drug Enforcement Admin.*, 492 F.3d 428, 432 (D.C. Cir. 2007) (holding that the plain language of § 1915(g) provides that a plaintiff incurs a strike only when the entire action is dismissed on one of the listed grounds).

on one of the enumerated grounds, 28 U.S.C. § 1915(g). Thus,"[u]nder the plain language of the statute, only a dismissal may count as a strike, not the affirmance of an earlier decision to dismiss." *Jennings v. Natrona Cnty. Det. Med. Facility*, 175 F.3d 775, 780 (10th Cir. 1999). Also, as noted in *Thompson*, "[t]he choice of the word 'dismiss' rather than 'affirm' in relation to appeals was unlikely an act of careless draftsmanship," but rather may be "most plausibly understood as a reference to section 1915(e)(2), which requires the court to '*dismiss* the case at any time if the court determines that ... the action *or appeal* ... is frivolous or malicious; [or] fails to state a claim on which relief may be granted.'" *Thompson*, 492 F.3d at 436 (emphasis and alterations in original) (quoting 28 U.S.C. § 1915(e)(2)(B)(i), (e)(2)(B)(iii)). Therefore, a dismissal of an appeal on one of the enumerated grounds counts as a PLRA strike, while an affirmance of a district court's dismissal does not, even if the underlying dismissal itself counts as a strike.

The final question is whether a strike accrues as soon as an action is dismissed, or only when that dismissal has been affirmed on appeal or the opportunity to appeal has otherwise come to a close. The statute is silent on whether a prior dismissal must be final to count as a strike and simply says that, to bar IFP status, the dismissals need to have occurred "on 3 or more prior occasions." 28 U.S.C. § 1915(g). But other circuits that have considered the issue have concluded that a dismissal must be final before it counts as a strike. *See Thompson*, 492 F.3d at 439 (noting that "a dismissal does not become a strike until an appeal thereof has been resolved or waived"); *Jennings*, 175 F.3d at 780 ("[A] § 1915(e)(2)(B) dismissal should not count against a litigant until he has exhausted or waived his appeals."); *Adepegba v.*

33

*Hammons,* 103 F.3d 383, 388 (5th Cir. 1996) ("It is uncontroversial from the plain language of the statute that Congress intended section 1915(g) only to penalize litigation that is truly frivolous, not to freeze out meritorious claims or ossify district court errors. We accordingly read dismissals under the statute to include only those for which appeal has been exhausted or waived."). *Cf. Snider*, 199 F.3d at 115 ("We also doubt whether the entry of a strike is properly considered at the time an action is dismissed."). That rule makes sense. As the Tenth Circuit recognized, "to count strikes before the litigant has an opportunity to appeal the district court's dismissal is to risk inadvertently punishing nonculpable conduct." *Jennings*, 175 F.3d at 780 (internal quotation marks omitted). "For example, a 'hyper-literal' reading of § 1915(g) to count all district court dismissals as 'prior occasions' whether or not the litigant has appealed those decisions could bar a prisoner's appeal of an erroneous third strike, since the appeal would follow three prior dismissals. Or, an indigent prisoner's fourth claim could expire while one or more of his first three dismissals was being reversed on appeal." *Id.* We will therefore follow the rule of those circuits that hold that a dismissal does not count as a strike until it has been affirmed on appeal, or the opportunity to appeal has otherwise concluded.[22]

---

[22] That rule would, of course, mean that dismissal of an action that gave rise to an appeal would not count as a strike for purposes of that appeal, even if it had been on one of the grounds enumerated in § 1915(g). *See Pigg v. FBI,* 106 F.3d 1497, 1498 (10th Cir. 1997) (concluding that, because "'[p]rior' is defined in Webster's Ninth New Collegiate Dictionary as 'earlier in time,'" the district court erred in

#### 4. Tallying Ball's Strikes for Purposes of the Present Appeals

Defendants argue that Ball had accrued at least ten strikes for purposes of these appeals.[23] Three of those

counting the plaintiff's instant action as one of the three prior actions).

That rule leaves open the question of whether a prisoner accrues a strike as soon as a dismissal by the district court is affirmed by a court of appeals, or only when the Supreme Court has denied or dismissed a petition for writ of certiorari or the time for filing one has passed. Because there is no evidence that Ball has filed such petitions, and the time for filing with respect to the dismissals at issue in these appeals has passed, we need not resolve that question, though the logic of our present decision would indicate waiting for the certiorari period to close is appropriate. *See Hafed*, 635 F.3d at 1176 ("We now clarify that a strike counts against a prisoner from the date of the Supreme Court's denial or dismissal of a petition for writ of certiorari, if the prisoner filed one, or from the date when the time to file a petition for writ of certiorari expired, if he did not.").

[23] Those ten purported strikes are *Ball v. SCI Muncy*, No. 08-cv-0391 (M.D. Pa. Dec. 10, 2008); *Ball v. Hartman*, No. 09-cv-0844, 2010 WL 597401 (M.D. Pa. Feb. 16, 2010); *Ball v. Butts*, No. 11-cv-1068 (M.D. Pa. June 15, 2011), *appeal dismissed as frivolous*, 445 F. App'x 457 (3d Cir. 2011) (counting as two strikes); *Ball v. Beard*, No. 09-cv-0845 (M.D. Pa. Feb. 3, 2012); *Ball v. Campbell*, No. 11-cv-2239, 2012 WL 1979462 (M.D. Pa. June 1, 2012); *Ball v. Giroux*, 12-cv-0011, 2012 WL 728069 (M.D. Pa. Mar. 6, 2012); *Ball v. Giroux*, No. 12-cv-0812, 2012 WL 3597214

dismissals[24] do not count as strikes because they were not final when Ball filed the appeals before us now. Three others[25] do not count as strikes for present purposes because the actions were dismissed after these appeals were filed. That leaves the District Court's dismissal of Ball's complaints in *SCI Muncy*, *Hartman*, and *Butts* and our dismissal of her appeal in *Butts*.

Given the rules set forth in the preceding sections, Ball has three strikes that bar her IFP status with respect to both of the appeals before us now.[26] First, although the Court dismissed the complaint in *SCI Muncy* due to failure to exhaust, it found that that affirmative defense was plain on the face of the complaint, because Ball "states that she did not complete the grievance process." *SCI Muncy*, No. 08-cv-0391 (M.D. Pa.) (Doc. 36, pp. 2-3). Based on that explicit finding, and because the Court dismissed the complaint on defendants' Rule 12(b)(6) motion and we affirmed, that dismissal caused Ball to accrue a PLRA strike.

In its dismissal of the *Hartman* action, the District Court discussed both whether Ball had sufficiently pled the elements of a § 1983 claim and whether she had alleged a

(M.D. Pa. Aug. 16, 2012); *Ball v. D'Addio*, 12-cv-0815, 2012 WL 3597249 (M.D. Pa. Aug. 16, 2012); and *Ball v. Sisley*, 11-cv-0877, 2012 WL 5509899 (M.D. Pa. Nov. 14, 2012).

[24] *Beard*; *Giroux*, No 12-cv-0011; and *Campbell*.

[25] *Giroux*, No. 12-cv-0812; *D'Addio*; and *Sisley*.

[26] The analysis is the same for appeals 12-1067 and 12-2604, now before us, because the operative strikes all occurred prior to both of these appeals.

cognizable injury-in-fact sufficient for Article III standing. *See supra* note 5.[27]  However, the District Court found that Ball failed to plead one of the "essential elements" of a § 1983 claim because she had not alleged the personal involvement of the defendants and therefore had not pled "that the conduct complained of was committed by a person acting under color of state law." *Hartman*, 2010 WL 597401, at *2; *see also id.* ("[E]ach named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie [the] claim."); *Hartman*, 2010 WL 146319, at * 5 (observing that there were no factual allegations against one of the defendants).   The Court thus dismissed the case on defendants' Rule 12(b)(6) motions for failure to state a claim, *see Hartman*, 2010 WL 597401, at *3; *Hartman*, 2010 WL 146319, at *6-*7, we affirmed, and that dismissal represents Ball's second strike.

The District Court's dismissal of *Butts* does not count as a strike because it was based on immunity.  *See Butts*, No. 11-cv-1068 (M.D. Pa.) (Doc. 8) (dismissing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii)).   However, we dismissed the appeal in *Butts* as frivolous, saying that "[a]n appeal is frivolous if it lacks an arguable basis either in law or in fact," and that Ball's appeal lacked any such basis because she had "alleged nothing suggesting that Judge Butts acted in the clear absence of all jurisdiction." *Butts*, 445 F. App'x at 458 (internal quotation marks omitted).[28]   Because

---

[27] The Court also considered the doctrines of Eleventh Amendment and quasi-judicial immunity.  *See supra* note 4.

[28] We also noted that, "[t]o the extent that Ball's request for injunctive relief might not have been subject to

frivolousness is an enumerated strike ground, our dismissal of Ball's *Butts* appeal caused her to accrue her third strike. Ball therefore had three strikes at the time she commenced these appeals, which would generally bar her from proceeding IFP.[29]

### B.      *Imminent Danger of Serious Physical Injury*

Even though Ball has three strikes with respect to both of the present appeals, she may proceed IFP if, at the time she filed her appeal, she was "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Ball alleges danger of serious injury based on each of the types of mistreatment that she says she has suffered: burns and bruises sustained at the

---

dismissal under § 1915(e)(2)(B)(iii) [for immunity], it was subject to dismissal under § 1915 (e)(2)(B)(ii) [for failure to state a claim] because such relief is not available against 'a judicial officer for an act ... taken in such officer's judicial capacity' ... ." *Butts*, 445 F. App'x at 458  (first alteration in original) (quoting 42 U.S.C. § 1983).

[29] In August 2012, the District Court revoked Ball's IFP status on the ground that she had accrued three strikes, counting its own dismissals in *Hartman* and *Butts* and our dismissal of the *Butts* appeal.  *See Hummel*, 2012 WL 3614045, at *1; *supra* note 9.  For the reasons set forth in this opinion, the Court's *Butts* dismissal does not count because it was based on the immunity of the defendant judge.  However, the District Court could have revoked Ball's IFP status at the time it dismissed the *Hummel* action in August 2012, by counting its dismissal of *SCI Muncy* as the third strike.

38

hands of prison personnel, denial of the use of a wheelchair or cane and of pain medication for her arthritis, lack of proper treatment for her vision, and exposure to mold and mace that has aggravated her asthma.

"Before denying leave to proceed IFP, courts must review a frequent filer's well-pled allegations to ensure that the prisoner is not in imminent danger" of serious physical injury. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003). "The imminent danger exception allows the district court [or an appellate court] to permit an otherwise barred prisoner to file a complaint I.F.P. if the prisoner could be subject to serious physical injury and does not then have the requisite filing fee." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) (en banc). Congress included the exception as a "safety valve for the 'three strikes' rule" because it "[r]ecogniz[ed] that it could take prisoners [with three strikes] a significant period of time to obtain the filing fee." *Id.*

"'Imminent' dangers are those dangers which are about to occur at any moment or are impending." *Id.* "By using the term 'imminent,' Congress indicated that it wanted to ... prevent impending harms, not those harms that had already occurred." *Id.*; *see also Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999) ("Congress' use of the present tense in § 1915(g) confirms that a prisoner's allegation that he faced imminent danger sometime in the past is an insufficient basis to allow him to proceed in forma pauperis ... ."). The danger must also be imminent at the time the complaint or appeal is filed. *See Abdul-Akbar*, 239 F.3d at 312 ("[A] prisoner may invoke the 'imminent danger' exception only to seek relief from a danger which is 'imminent' at the time the

complaint is filed."); *Banos v. O'Guin*, 144 F.3d 883, 885 (5th Cir. 1998) ("[T]he language of § 1915(g), by using the present tense, clearly refers to the time when the action or appeal is filed ... .").

Although § 1915(g)'s "imminent danger" exception might appear clear in theory, in practice it represents an "amorphous standard." *Ciarpaglini*, 352 F.3d at 331. Courts have found imminent danger when a prisoner was placed near enemies who had beaten him, *Ashley v. Dilworth*, 147 F.3d 715 (8th Cir. 1998), when a prisoner suffered headaches and other symptoms as a result of exposure to dust and lint, *Gibbs v. Cross*, 160 F.3d 962 (3d Cir. 1998), and when a prisoner needed dental care due to an oral infection, *McAlphin v. Toney*, 281 F.3d 709 (8th Cir. 2002). The denial or withdrawal of needed medications can also constitute an imminent danger. *See, e.g.*, *Brown v. Johnson*, 387 F.3d 1344, 1346 (11th Cir. 2004) (withdrawal of medications for HIV and hepatitis); *Ciarpaglini*, 352 F.3d at 330 (denial of medication for bipolar, attention deficit, and panic disorders).

But "[c]ourts … deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous." *Ciarpaglini*, 352 F.3d at 331. For example, complaining two years later of inadequate protection from reprisals by other prisoners can hardly be said to be an allegation of "imminent" danger, *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003), just as working in inclement weather may not be "danger" at all, *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). Courts also reject imminent danger claims when a prisoner alleges only a past injury that has not recurred. *See, e.g.*, *Abdul-Akbar*, 239 F.3d at 315 (concluding that being sprayed with pepper spray

40

on one occasion is not imminent danger); *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996) (concluding that being given Ibuprofen instead of a stronger pain medication for an injury that had already healed is not imminent danger). And "vague and utterly conclusory" assertions that medical treatment has been withheld, particularly when a prisoner has been seen repeatedly by a physician, do not amount to a showing of imminent danger. *White v. Colorado*, 157 F.3d 1226, 1231 (10th Cir. 1998).

Most of Ball's allegations plainly fail to demonstrate imminent danger of serious physical injury that would entitle her to the exception to the PLRA bar. Her imminent danger allegation based on burns and bruises that she says she sustained at the hands of prison personnel is based on a single past incident, and therefore does not suggest a threat of future harm. *Cf. Abdul-Akbar*, 239 F.3d at 315 n.1 (concluding that a single alleged past assault with pepper spray did not constitute imminent danger). Also, her allegation that her injuries from that incident went untreated is not supported by the record. Her allegations relating to her failing eyesight and osteoarthritis represent disagreements about the quality of the medical care that she is receiving which, even if true, are not sufficient to support an imminent danger claim. *See Brown v. Beard*, 492 F. Supp. 2d 474, 478 (E.D. Pa. 2007) (rejecting imminent danger claim when prisoner "does not dispute that he is receiving medical attention, but merely disputes the findings and quality of the treatment he is receiving"). Moreover, even if poor care for her past injuries, her eyesight, or her arthritis may prove detrimental to Ball's health over time, they do not represent "imminent dangers" which are "about to occur at any moment or are impending." *Abdul-Akbar*, 239 F.3d at 315.

41

Ball's allegation of imminent danger based on having been sprayed with mace is contradicted by the record, *see Ball v. Buckley*, No. 11-cv-1829 (M.D. Pa.) (Doc. 81) (noting that Dr. Famiglio had cleared her for the use of mace, given her history of assaultive behavior, after balancing her mild asthma with safety and security needs),[30] but her allegation of imminent danger due to mold in her cell is similar to one that we have found sufficient to invoke the exception. In *Gibbs*, *supra*, a prisoner alleged that he was forced to breathe particles of lint and dust that were dispersed into his cell through the ventilation system. The prisoner claimed to have been suffering from "severe headaches, changes in voice, mucus that is full of dust and lint, and watery eyes," and that, "depending on the nature of the particles that he is breathing, there is a significant possibility that he is under imminent danger of serious physical injury." *Gibbs*, 160 F.3d at 965 (internal quotation marks omitted). We rejected the

---

[30] Ball's mace-based allegation of imminent danger is also similar to one that we rejected in *Abdul-Akbar v. McKelvie*, 239 F.3d 307 (3d Cir. 2001). Ball's allegation appears to be based on a single incident in August 2011 that is the subject of another of Ball's lawsuits, in which prison officials used mace to secure her after she refused to answer direct orders or to uncover the door to her cell when medications were offered. *See Ball v. Buckley*, No. 11-cv-1829 (M.D. Pa.) (Doc. 82). As such, it is insufficient to support a claim of imminent danger. *See Abdul-Akbar*, 238 F.3d at 315 n.1 (concluding that a single alleged incident in which the prisoner was sprayed with pepper spray does not "suffice to establish ... an ongoing danger" at the time an appeal was filed).

defendant's argument that the prisoner's allegations were merely speculative, and concluded that they were sufficient for him to claim the benefit of the exception to the PLRA's three strikes rule. *See id.* ("Inmates ought to be able to complain about unsafe, life-threatening condition[s] in their prison without waiting for something to happen to them." (alteration in original) (internal quotation marks omitted)).

*Gibbs*, however, is distinguishable. The defendant in that case did not contradict the prisoner's allegations as to the air quality in his cell or the nature of his symptoms, but rather "attempt[ed] to minimize such allegations by emphasizing their speculative nature." *Id.* We held that, "under our liberal pleading rules," a district court must "credit[] those allegations of 'imminent danger' that have gone unchallenged."[31] *Id.* at 966. In this case, Dr. Famiglio testified that Ball is not exposed to mold or other "environmental elements" and "has not had a reported or witnessed asthma attack since her incarceration several years ago." (App. at 106.) The record also suggests that any breathing problems that Ball suffered at the time she filed this appeal may have been due to a fecal bacterial lung infection (for which she was treated) that was caused by her smearing herself with her own feces. Those facts tend to refute Ball's mold-based imminent danger allegation. *Cf. Polanco v. Hopkins*, 510 F.3d 152, 155 (2d Cir. 2007) (concluding that prisoner's allegations that he had been exposed to mold in a shower "cannot support a determination that he was in

---

[31] How *Gibbs* may be affected by the stricter pleading standards instituted by the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2006), is not a question we need to address today.

imminent danger of serious physical injury" (internal quotation marks omitted)).

The conflicting statements regarding Ball's mold-related imminent danger allegation raise the question of whether remand is warranted. As we noted in *Gibbs*, § 1915(g) "will often times necessitate further factfinding proceedings once the imminent danger allegation is challenged[,] a byproduct of the PLRA most likely not contemplated by Congress, but which must nonetheless be handled by the courts." 160 F.3d at 967 n.8. The Supreme Court has cautioned that "the *in forma pauperis* statute ... accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless," such as "claims describing fantastic or delusional scenarios ... ." *Denton*, 504 U.S. at 32 (quoting *Neitzke*, 490 U.S. at 327-28) (internal quotation marks omitted). Thus, neither *Gibbs* nor our other precedents require us to "accept as having an arguable basis in fact all allegations that cannot be rebutted by judicially noticeable facts," *id.* (citation and internal quotation marks omitted), or prevent us from "discrediting factual claims of imminent danger that are clearly baseless ... ." *Gibbs*, 160 F.3d at 967 (internal quotation marks omitted).[32]

---

[32] The Supreme Court's holding that a court may dismiss a prisoner's claim if the allegations are "fanciful, fantastic, [or] delusional," *Denton*, 504 U.S. at 32-33 (citation and internal quotation marks omitted) was limited to the dismissal of claims as frivolous. But we think that the underlying reasoning, based on the purpose of the PLRA to

44

Those principles allow us to consider the credibility of Ball's mold-related allegations in the context of all of the facts of this case to determine whether a remand on the question of imminent danger is necessary. *See Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010) ("[W]hen a defendant contests a plaintiff's claims of imminent danger, a court must act to resolve the conflict. A contrary conclusion would mean that a three-strikes plaintiff could proceed IFP whenever his allegations of imminent danger were facially plausible ... ."); *White*, 157 F.3d at 1232 (concluding that the defendant "has failed to raise a credible allegation that he is in imminent danger of serious physical harm, and, therefore, he does not come under the exception to § 1915(g)"). That approach is particularly appropriate in this case because it has proceeded through discovery and was disposed of on defendants' motions for summary judgment. *See Denton*, 504 U.S. at 33 (noting that a prisoner's "improbable allegations might be properly disposed of on summary judgment" and after "factual development").

Based on the record before us, we conclude that Ball's mold-related allegations are not sufficiently credible to warrant remand. Her medical records and the testimony of Dr. Famiglio cast serious doubt on whether she had actually been exposed to mold at the time she filed this appeal and, even if she had been, whether it had the effect she alleges, given that she suffered from "no current [medical] conditions requiring regular monitoring let alone treatment." (App. at

reduce frivolous prisoner litigation, applies equally to factual allegations of imminent danger that would permit a prisoner to avoid the application of the PLRA's three strikes provision.

45

89.) Moreover, by her own admission, Ball "see[s] and hear[s] things not there," and "can't think clearly." (Magistrate's Judge's Report at 1 (quoting *Ball v. Beard*, No. 09-cv-0845 (M.D. Pa.) (Doc. 42, pp. 6-7)) (internal quotation marks omitted).) Ball's admitted "cognitive problems and disorders," *id.*, make her claims of exposure to mold and resulting asthma attacks less believable than they might otherwise be.[33] Lastly, Ball has provided no evidence to support her mold-related allegations – or any of her other physical injury allegations – in either of her motions regarding imminent danger. Because a prisoner claiming that she is in imminent danger of serious physical harm must "make specific [and] credible allegations to that effect," *Childs v. Miller*, 713 F.3d 1262, 1267 (10th Cir. 2013) (alteration in original) (internal quotation marks omitted), and Ball has failed to do so, the imminent danger exception does not apply, and her three PLRA strikes bar her from IFP status for purposes of these appeals.

---

[33] We are not implying that prisoners with delusions are to have their allegations disregarded for that reason alone. While an admittedly delusional plaintiff may face credibility challenges based on the existence of his or her delusions, the record ought otherwise provide some support for a negative determination on credibility before the court entirely discounts the claim of imminent danger. We also do not suggest that a credibility determination may be based on a prisoner's prior litigation history alone. *See Gibbs*, 160 F.3d at 966 ("Congress [in enacting § 1915(g)] was clearly concerned with continuing to afford *in forma pauperis* filing status to inmates who had a history suggestive of abusing the judicial system.").

**III.** **CONCLUSION**

For the foregoing reasons, we will deny Ball's request to proceed IFP on these appeals. Unless she pays the docketing fee within 14 days of the judgment rendered herewith, these appeals will be dismissed pursuant to Third Circuit L.A.R. 107.1(a). Ball's motion for appointment of counsel will be denied without prejudice.