**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 15-2278

———————

KAREEM HASSAN MILLHOUSE,

Appellant

v.

LT S.I.S. SUSAN V. HEATH; ERB OFFICER;
JAMES FOSNOT; WARDEN CANAAN USP;
SCOTT HOLZAPLE; FREDERICK ENTZEL; JOHN DOES
1-10

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 1-14-cv-01637)
Honorable Sylvia H. Rambo, District Judge

———————

Argued May 10, 2017

BEFORE:  AMBRO, RESTREPO, and COWEN, <u>Circuit
Judges</u>

(Opinion Filed:  August 4, 2017)

—————————

Stephen A. Fogdall  (ARGUED)
Emily J. Hanlon
Schnader Harrison Segal & Lewis
1600 Market Street
Suite 3600
Philadelphia, PA 19103

   *Counsel for Appellant*

Timothy S. Judge     (ARGUED)
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

   *Counsel for Appellees*

—————————

OPINION OF THE COURT

—————————

COWEN, <u>Circuit</u> <u>Judge</u>.

Plaintiff Kareem Hassan Millhouse, a prisoner at USP Lewisburg, appeals from an order of the United States District Court for the Middle District of Pennsylvania denying his motion to proceed *in forma pauperis* ("IFP").

Initially, this Court must decide whether Millhouse is eligible for IFP status on appeal under the Prison Litigation

Reform Act ("PLRA"). We conclude that he is eligible, and, accordingly, we grant his motion to proceed IFP on appeal. For purposes of this appeal, Millhouse has only one strike. The Court must look to the date the notice of appeal is filed—and not the date that the Court rules on a prisoner's motion to proceed IFP—in assessing whether a particular dismissal counts as a strike. In short, strikes that accrue before the filing of the notice of appeal count—while strikes that accrue after the notice of appeal is filed do not. While the Bledsoe strike accrued before the filing of Millhouse's notice of appeal, both Doe and Heath II were decided after Millhouse filed his notice of appeal. However, even if we were to count Doe and Heath II (which we do not), Millhouse would still only have two strikes, i.e., Bledsoe and Doe. Because the District Court explicitly and correctly concluded that Millhouse's complaint revealed an immunity defense on its face and dismissed with prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Doe qualifies as a strike. But we also conclude that a dismissal without prejudice for failure to state a claim does not rise to the level of a strike. Accordingly, Heath II does not qualify as a strike.

Turning to the merits of the underlying decision by the District Court, we will vacate the District Court's order and remand for further proceedings.

I.

On August 22, 2014, Millhouse filed a pro se complaint against several prison employees, alleging constitutional violations under the Bivens doctrine. In a May 5, 2015 order, the District Court denied Millhouse's motion for leave to proceed IFP, dismissed his complaint under 28 U.S.C. § 1915(g)

3

without prejudice to refiling if Millhouse submits the full filing fee, and denied his motion for leave to amend (as well as his motion for a preliminary injunction and for leave to add exhibits). In its accompanying memorandum, the District Court identified five strikes pursuant to § 1915(g) and found that Millhouse failed to establish that he was under imminent danger of serious physical injury.

Acting pro se, Millhouse filed a notice of appeal on May 19, 2015. On June 15, 2015, he moved to proceed with this appeal IFP. On November 6, 2015, we stayed the instant case pending Millhouse v. Sage, C.A. No. 14-3845, another appeal filed by Millhouse. On February 11, 2016, the Court issued its opinion in Sage. In this disposition, we determined that only one of the putative strikes cited by the District Court actually qualifies as a strike: Milhouse v. Bledsoe, No. 10-cv-0053 (M.D. Pa. Oct. 6, 2010).[1] See Millhouse v. Sage, 639 F. App'x 792, 792-95 (3d Cir. 2016) (per curiam).

While this appeal was stayed, the District Court considered two other pro se actions filed by Millhouse: Milhouse v. Heath, No. 15-cv-00468 (M.D. Pa.) ("Heath II"), and Milhouse v. Doe, No. 16-cv-00146 (M.D. Pa.).

In his Heath II complaint (filed on March 9, 2015), Millhouse claimed that prison officials violated the Eighth Amendment by housing him with another inmate who posed a risk of danger to him. In an October 27, 2015 order, the District Court stated that Millhouse's motion to proceed IFP (construed

---

[1] It appears that Millhouse has spelled his name as "Milhouse." Although the District Court also used this spelling, his prison records spelled his name as "Millhouse."

4

as a motion to proceed without full prepayment of the filing fee) "is **GRANTED**," "Milhouse's complaint is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)," "[t]he Clerk of Court shall **CLOSE** this case," and "[a]ny appeal from this order will be deemed frivolous, not taken in good faith and lacking probable cause." Milhouse v. Heath, No. 15-cv-00468, 2015 WL 6501461, at *5 (M.D. Pa. Oct. 27, 2015). In its accompanying memorandum, the District Court explained that Millhouse did not allege any facts from which it could be found that he was injured by his cellmate. "While Milhouse may assert that he is in danger because of the dangerous nature of his cellmate, this type of danger is speculative and not a basis for relief." Id. at *4. According to the District Court, Millhouse also had no constitutional right to choose his place of confinement or his cellmate. Given Millhouse's failure to set forth any factual allegations giving rise to cognizable claims, "it is impossible to conclude that defendants have deprived Milhouse of any constitutional rights entitling him to monetary damages, and as stated above Milhouse has no entitlement to injunctive relief in the form of a transfer out of the federal prison system." Id. "As such, the present complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as Milhouse fails to state a claim against the defendants upon which relief may be granted." Id. The District Court further explained in its memorandum that the complaint would be dismissed without leave to amend as it would be inequitable and futile to grant Millhouse the opportunity to do so.

On January 27, 2016, Millhouse filed his complaint in Doe against three unidentified Third Circuit judges. According to Millhouse, a Third Circuit opinion falsely asserted that he had confessed to committing a crime, and this opinion was accessed

by other inmates on a law library computer, who then harassed and assaulted Millhouse. In a February 24, 2016 order, the District Court stated that Millhouse's motion to proceed IFP (again construed as a motion to proceed without full prepayment of the filing fee) "is **GRANTED**," "Milhouse's complaint is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted pursuant to *28 U.S.C. § 1915(e)(2)(B)(ii)*," "[t]he Clerk of Court shall **CLOSE** this case," and "[a]ny appeal from this order will be deemed frivolous, not taken in good faith and lacking probable cause." (A285.) In a footnote, the District Court explained that Millhouse "has only named defendants who have absolute immunity" and that it would be inequitable to grant him an opportunity to file an amended complaint against those defendants. (A285 n.1.) According to the District Court's memorandum, the judges were entitled to absolute immunity from monetary damages because Millhouse's claims were based on actions taken in the exercise of their official duties. Noting that Millhouse appeared to claim he was in danger of future assaults and sought a transfer out of the federal prison system, the District Court also concluded that he clearly failed to state a cognizable claim. Millhouse did not allege any facts indicating that prison officials failed to protect him, and he also did not name any prison officials as defendants in his complaint. A prisoner, in turn, has no justifiable expectation that he will be incarcerated in a particular facility. "While there is no indication that Milhouse initiated this lawsuit with malicious intentions, the complaint is suitable for summary dismissal under the in forma pauperis statute because it fails to articulate an arguable factual or legal basis under federal law." Milhouse v. Doe, No. 16-cv-00146, 2016 WL 727619, at *4 (M.D. Pa. Feb. 24, 2016). Acknowledging the general principle that failure to state a claim under the Federal Rules of Civil

6

Procedure is not tantamount to legal frivolity pursuant to § 1915(g), the District Court found that "[t]he fatal defect in this complaint is not merely that it fails to state a claim under Bivens, but that it describes neither conduct nor injury that implicates the Constitution or other federal law." Id. It insisted that service of process would thereby represent a waste of scarce judicial resources.

The stay of this appeal was lifted on April 5, 2016. Subsequently, the motion to proceed IFP was referred to a merits panel, and the Court indicated that it would benefit from the appointment of counsel to address the following issues:

> (1) whether the dismissal in [Heath II] qualifies as a strike for purposes of 28 U.S.C. § 1915(g); compare McLean v. United States, 566 F.3d 391, 396 (4th Cir. 2009) (cited in Ball v. Famiglio, 726 F.3d 448, 460 n.17 (3d Cir. 2013)), with Orr v. Clements, 688 F.3d 463, 465 (8th Cir. 2012); (2) whether the dismissal in [Doe] qualifies as a strike; see Ball, 726 F.3d at 460-63; (3) if these dismissals qualify as strikes, whether their timing precludes Appellant from proceeding in forma pauperis in this appeal; (4) if this Court decides that Appellant has three strikes, whether he is under imminent danger of serious physical injury for purposes of § 1915(g); and (5) if this Court decides that Appellant qualifies for in forma pauperis status on appeal, whether the District Court's decision on appeal should be vacated.

(A18-A19.)[2] Millhouse did not object, and Stephen A. Fogdall, Esq., and Emily J. Hanlon, Esq. were appointed as his pro bono counsel.[3]

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We possess appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review with respect to the proper interpretation of the PLRA and its three strikes rule. See, e.g., Ball, 726 F.3d at 455 n.11.

## III.

28 U.S.C. § 1915(g) limits a prisoner's ability to obtain IFP status:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of

---

[2] Because we determine that Millhouse does not have three strikes, we need not (and do not) decide "whether he is under imminent danger of serious physical injury for purposes of § 1915(g)."

[3] We express our thanks to Mr. Fogdall and Ms. Hanlon for their excellent work in this matter.

serious physical injury.

In Byrd v. Shannon, 715 F.3d 117 (3d Cir. 2013), we set forth our general approach for deciding what constitutes a strike under this provision of the PLRA:

> Thus, we adopt the following rule: a strike under § 1915(g) will accrue only if the entire action or appeal is (1) dismissed explicitly because it is "frivolous," "malicious," or "fails to state a claim" or (2) dismissed pursuant to a statutory provision or rule that is limited solely to dismissals for such reasons, including (but not necessarily limited to) 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i), 1915(e)(2)(B)(ii), or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Id. at 126.

"The 'three strikes' provision was 'designed to filter out the bad claims and facilitate consideration of the good.'" Coleman v. Tollefson, 135 S. Ct. 1759, 1764 (2015) (quoting Jones v. Bock, 549 U.S. 199, 204 (2007)); see also, e.g., Abdul-Akbar v. McKelvie, 239 F.3d 307, 314 (3d Cir. 2001) (en banc) (noting that Congress enacted PLRA to limit filing of frivolous and vexatious prisoner lawsuits). Partially abrogating our ruling in Ball v. Famiglio, 726 F.3d 448 (3d Cir. 2013) (in which we held, inter alia, that a strike does not accrue until the dismissal has been affirmed on appeal or the opportunity to appeal has otherwise passed, id. at 464-65), the Supreme Court concluded that the refusal to treat a prior dismissal as a strike because of a pending appeal (at least where the prisoner is not seeking to appeal from a "third-strike trial-court dismissal") would result in "a leaky filter," Coleman, 135 S. Ct. at 1764-65. While the

9

statutory scheme thereby seeks to reduce the likelihood of frivolous lawsuits (while improving the quality of the remaining prisoner actions), it would run counter to the PLRA's goals if our approach "will inevitably lead to more, and perhaps unnecessary, litigation on whether or not a particular dismissal constitutes a strike." Byrd, 715 F.3d at 126. Accordingly, the Byrd Court adopted a bright-line rule for this determination. Id. We did so while recognizing that, "[i]f courts are permitted to consider the nature of the dismissal and determine whether the dismissal fits within the language of § 1915(g), then there is less likelihood that a dismissal intended as a strike will slip through the cracks created by a categorical rule that bars courts from undertaking such an examination." Id.

## A.    Strikes and the Notice of Appeal

It is undisputed that, while Millhouse filed his notice of appeal on May 19, 2015 (and his IFP motion on June 15, 2015), his second and third putative strikes—Heath II and Doe— accrued on October 27, 2015 and February 24, 2016. On November 6, 2015, this appeal was stayed pending our disposition in Sage. Sage was decided on February 11, 2016, and this Court lifted its stay on April 5, 2016. Millhouse's motion for leave to proceed with his appeal IFP still remains pending. According to Appellees and Judge Ambro's partial dissent and concurrence, these dismissals count as strikes for purposes of this appeal because they both accrued before this Court had granted the IFP motion. Unlike Appellees, Judge Ambro believes that we should then equitably toll these two strikes, and he accordingly would grant Millhouse IFP status. However, we must look to the date the notice of appeal is filed—and not the date that we grant a prisoner's motion to proceed IFP—in assessing whether a particular dismissal counts

10

as a strike. Strikes that accrue before the filing of the notice of appeal count as strikes—while strikes that accrue after the notice of appeal is filed do not. Because the second and third putative strikes accrued after Millhouse filed his notice of appeal, they could not count as strikes for purposes of this appeal.

We begin, as we must, with the statutory language. See, e.g., Abdul-Akbar, 239 F.3d at 313 ("'Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.'" (quoting Negonsott v. Samuels, 507 U.S. 99, 104 (1993))). Under the plain language of the PLRA, it is the filing of the notice of appeal that "triggers" the three strikes rule. Specifically, § 1915(g) provides that a prisoner shall in no event "bring a civil action or appeal a judgment in a civil action or proceeding" under this section if the prisoner has, "on 3 or more prior occasions," brought an action or appeal that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted. This language indicates that a prisoner like Millhouse cannot "appeal a judgment in a civil action or proceeding" under the IFP statute if he or she has accrued strikes "on 3 or more prior occasions." In other words, these strikes must have accrued "prior" to the "appeal [of] a judgment in a civil action or proceeding." A prisoner (or any other litigant) "appeal[s] a judgment in a civil action or proceeding" by filing a notice of appeal. Federal Rule of Appellate Procedure 3(a)(1) specifies that "[a]n appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4." In general, "the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from" (or "within 60 days" if one of the parties is the

11

United States, a United States agency, a United States officer or employee sued in an official capacity, or a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on behalf of the United States). Fed. R. App. P. 4(a)(1); see also, e.g., Bowles v. Russell, 551 U.S. 205, 214 (2007) ("[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement."). As Millhouse aptly explains, "[i]t follows that a prisoner may not 'appeal a judgment in a civil action or proceeding' *in forma pauperis* if the prisoner has accrued 3 strikes prior to filing the notice of appeal."[4] (Appellant's Reply Brief at 4.)

None of the cases cited by Appellees (or the partial dissent and concurrence) actually considered the meaning of § 1915(g) and its "appeal a judgment in a civil action or proceeding" language. Accordingly, they did not resolve the

---

[4] In fact, we have held that a notice of appeal cannot be rejected merely because the filing fee has not been paid. See, e.g., Lee v. Superintendent Houtzdale SCI, 798 F.3d 159, 164-65 (3d Cir. 2015). If a notice of appeal may not be rejected on the basis that the litigant failed to include the requisite fee, the subsequent grant of an IFP application likewise should not affect the timing of an "appeal [of] a judgment in a civil action or proceeding." After all, the whole point of IFP status is to allow indigent litigants to appeal "without prepayment of fees." 28 U.S.C. § 1915(a); see also, e.g., Ball, 726 F.3d at 452 n.1 ("The prisoner is still required to pay the costs of her action or appeal, a departure from pre-PLRA practice, see Denton v. Hernandez, [504 U.S. 25, 27 (1992)], paying an initial partial fee followed by installment payments until the entire fee is paid. 28 U.S.C. § 1915(b)(1).").

specific question of whether we should look to the date of filing of the notice of appeal or the date that we rule on a prisoner's IFP motion in assessing whether a dismissal counts as a strike. 28 U.S.C. § 1915(a)(1) provides that "any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." Relying on this provision, we have indicated that, when a litigant submits a complaint with an IFP motion, the complaint is duly filed after the motion to proceed IFP is granted. Urrutia v. Harrisburg Cnty. Police Dep't, 91 F.3d 451, 458 & nn.12-13 (3d Cir. 1996). "Thus, submitting an *in forma pauperis* complaint to the clerk does not result in commencement of the litigation." Id. at 458 n.13; see also Gibbs v. Ryan, 160 F.3d 160, 162 (3d Cir. 1998) ("His complaint was filed, and his action was 'brought' when his motion to proceed *in forma pauperis* was granted." (citing Urrutia, 91 F.3d at 458; Oatess v. Sobolevitch, 914 F.2d 428, 430 n.1 (3d Cir. 1990))); Oatess, 914 F.2d at 429 n.1 ("When a complaint is accompanied by a motion to proceed *in forma pauperis*, rather than by payment of a filing fee, the complaint is not docketed, and it is therefore not filed, until the motion has been granted."). However, "[w]e determined [in Urrutia] that, even though the limitations period ran out, '[t]his was not [his] fault[: h]e submitted his *in forma pauperis* complaint a full two months before the statute of limitations was due to expire.'" (Partial Dissent & Concurrence at 8 (quoting Urrutia, 91 F.3d at 458).) "Because of 'the delay in making a § 1915(d) determination . . . we [held] that, once a plaintiff submits an *in*

13

*forma pauperis* complaint,' the statute of limitations would be equitably tolled until the court grants the IFP application."[5] (Id. (quoting Urrutia, 91 F.3d at 459).)

In contrast, this Court has, at least implicitly, indicated that we must look to the filing of the notice of appeal as the proverbial trigger for deciding whether dismissals count as strikes. Tallying the plaintiff's strikes, we observed in Ball that, out of the ten purported strikes, three of the dismissals did not count as strikes because they were not final "when Ball filed the appeals before us now."[6] Ball, 726 F.3d at 465. "Three others do not count as strikes for present purposes because the actions were dismissed after these appeals were filed." Id. at 466 (footnote omitted). This Court had not yet ruled on Ball's IFP motion; in fact, the Ball Court had to decide whether or not to grant her motion. See, e.g., id. at 451. We thereby clearly

---

[5] Similarly, the issue in Oatess was whether a district court could dismiss a plaintiff's complaint sua sponte for failure to state a claim after the plaintiff was granted IFP status but before service of process occurred. Oatess, 914 F.2d at 429. Addressing an appeal where the IFP motion was actually granted on the same day it was filed, Gibbs considered "the narrow question" of whether § 1915(g) requires the district court to revoke IFP status granted before the enactment of the PLRA. Gibbs, 160 F.3d at 162.

[6] We again note that the Supreme Court abrogated Ball in part, generally holding that "a prior dismissal . . . counts as a strike even if the dismissal is the subject of an appeal." Coleman, 135 S. Ct. at 1763. But see id. at 1764-65 (refusing to resolve question of whether plaintiff would have three strikes if he or she were attempting to appeal from dismissal of third complaint).

14

meant that the discounted dismissals occurred after Ball filed his notices of appeal. While we did not specifically discuss the issue now before us (and went on to conclude that Ball had three strikes at the time she commenced her appeals, id. at 466), Ball's tallying of strikes clearly weighs in Millhouse's favor.

According to Appellees and Judge Ambro's partial dissent and concurrence, the term "bring" under § 1915(g) refers to the time when an IFP motion is granted. However, § 1915(g) distinguishes between "bring[ing] a civil action," on the one hand, and "appeal[ing] a judgment in a civil action or proceeding," on the other hand. "The word 'appeal' does occur as the object of the verb 'brought' later in Section 1915(g), in reference to a prisoner having 'brought an action or appeal' on 3 prior occasions and accrued strikes as a result" (Appellant's Reply Brief at 4 n.3). In O'Neal v. Price, 531 F.3d 1146 (9th Cir. 2008), the Ninth Circuit (in a majority opinion) rejected the theory that the prisoner's prior actions were not "brought" under this subsequent language (and thereby could not constitute strikes under § 1915(g)) "because he merely filed applications for in forma pauperis status which were subsequently denied," id. at 1151. Significantly, it concluded that "a plaintiff has 'brought' an action for the purposes of § 1915(g) when he submits a complaint and request to proceed in forma pauperis to the court." Id. at 1152. Furthermore, this Court (sitting en banc) recognized that "the word 'bring' in this context plainly refers to the time when the civil action is initiated." Abdul-Akbar, 239 F.3d at 313 (citing Gibbs, 160 F.3d at 162). The courts thereby must consider if the prisoner is under imminent danger at the time the complaint is filed (as opposed to the time of the alleged incident). Id. at 313-15. Likewise, the Fifth Circuit explained that "we must determine if danger exists *at the time the plaintiff seeks to file his complaint or notice of appeal*

15

*IFP*." Banos v. O'Guin, 144 F.3d 883, 885 (5th Cir. 1998) (per curiam) (emphasis in original).

We believe that our approach is consistent with both legislative intent and basic principles of fairness. Congress enacted the PLRA "to limit the filing of frivolous and vexatious prisoner lawsuits," Abdul-Akbar, 239 F.3d at 314, and the Supreme Court has indicated that § 1915(g) did not create a "leaky filter," Coleman, 135 S. Ct. at 1764. Nevertheless, we find nothing to suggest that Congress designed the statutory scheme to penalize prisoners for "the delay inherent" in the process of disposing of their IFP motions, Urrutia, 91 F.3d at 458 n.13. After all, the disposition of an IFP motion is often "a time-consuming process" that is, in large part, outside of the control of the pro se litigant. Id. At the very least, the Court does need time to make an indigency determination and to screen the prisoner's filing history for strikes. In turn, IFP motions should not be treated differently based on how quickly this Court may dispose of them. "To hold otherwise would . . . mean that similar *in forma pauperis* [motions] would be treated differently on the basis of how quickly [the Court] acted on them." Id. at 459. In fact, the partial dissent and concurrence acknowledges that it would be overly prejudicial to bar Millhouse access to this Court given the present circumstances. "Millhouse filed a notice of appeal and an IFP request in May and June 2015, respectively; the Clerk's Office took no action on the IFP request until it stayed the case five months later in November 2015 (pending the resolution of Sage); and [according to Judge Ambro] two strikes accrued during the Court's delay and mandated stay of the proceedings." (Partial Dissent & Concurrence at 8.) In other words, the purported second and third strikes "only accrued for the purposes of this

appeal due to our Court's delay."[7] (Id.)

Based on our ruling in Urrutia, the partial dissent and concurrence proceeded to "equitably consider the date of commencement for three-strikes purposes as June 15 (when Millhouse filed his IFP request) due to our Court's delay." (Id. at 9.) However, we question whether the equitable tolling doctrine (or similar concepts) could apply in this context. This appeal (unlike Urrutia) does not really implicate a statute of limitations or some sort of time limit that may be "tolled." It is also, at the very least, questionable whether it is proper, on the one hand, to interpret the PLRA so that strikes accrued after the filing of the notice of appeal but before the Court grants the IFP motion generally trigger the three strikes rule while, on the other hand, concluding that these strikes do not "really count" based on our own assessment of the specific circumstances of the proceeding. (See Oral Argument Transcript at 39-40 ("It could be an argument for equitable tolling. But equitable tolling, under 1915, where Congress has stated that in no, in no case should an appeal proceed without the court authorizing commencement, that says to me that equitable tolling shouldn't apply in that situation . . . .) (Counsel for Appellees).) Instead, we read the statutory scheme—given the statutory language,

---

[7] In addition to the concerns of basic fairness articulated above, there is a practical obstacle to Appellees' position that we should determine eligibility for IFP status on the date the Court rules on a prisoner's motion to proceed IFP. Appellees' position would render such motions extremely time-sensitive. That is, when the Court decides to grant IFP status, we would need to rule on the issue immediately. If there was any lapse between the determination and the ruling, we would have to return to the issue and verify that IFP status was still warranted.

existing case law, the purposes of the legislation, and basic considerations of fairness—as requiring us to look to the date the notice of appeal is filed in assessing whether a dismissal counts as a strike. Strikes accrued after this date simply do not count under § 1915(g).

Because the second and third putative strikes accrued after Millhouse filed his notice of appeal, they could not count as strikes for purposes of this appeal. Millhouse has only one strike and is eligible for IFP status on appeal.

## B. **Heath II and Doe**

Even if we were to count Doe and Heath II (which we do not), Millhouse would still only have two strikes—Bledsoe and Doe. Accordingly, he is still eligible for IFP status on appeal. In Sage, we determined that Bledsoe (which accrued before the filing of his notice of appeal) qualifies as a strike. Sage, 639 F. App'x at 793-94. Because the District Court explicitly and correctly concluded that the complaint revealed an immunity defense on its face and dismissed with prejudice for failure to state a claim upon which relief may be granted pursuant to § 1915(e)(2)(B)(ii), Doe also qualifies as a strike. However, we adopt the Fourth Circuit's approach in which a dismissal without prejudice for failure to state a claim does not rise to the level of a strike. Under this rule, Heath II thereby does not qualify as a strike.

Under § 1915(e)(2)(B)(ii), the court shall dismiss the case at any time if it determines that the action "fails to state a claim on which relief may be granted." In Ball, we held that a dismissal based on immunity does not constitute a strike, unless the district court "explicitly and correctly concludes that the complaint reveals the immunity defense on its face and

18

dismisses [with prejudice] the unexhausted complaint under Rule 12(b)(6) or expressly states that the ground for the dismissal is frivolousness." Ball, 726 F.3d at 463 & n.20. Ball, however, did not address a dismissal under § 1915(e)(2)(B)(ii). We now apply Ball to a complaint dismissed based on immunity under § 1915(e)(2)(B)(ii). As in Ball, such a dismissal is a strike only if the dismissal is with prejudice and the "court explicitly and correctly concludes that the complaint reveals the immunity defense on its face." Id. at 463. Millhouse asserts that Doe "was not 'correct,' and that under a liberal pleading standard he should have the opportunity to amend his complaint to include non-immune defendants" (specifically the prison officials who allegedly allowed inmates to access the Third Circuit opinion on the law library's computers). (Partial Dissent & Concurrence at 7.) Purportedly, "you cannot ascertain from the face of the dismissal whether the district court evaluated if the pleading could be amended to state a claim against non-immune defendants." (Oral Argument Transcript at 20 (Counsel for Appellant).) In Doe, the District Court "explicitly" dismissed with prejudice Millhouse's complaint for "'fail[ure] to state a claim'" pursuant to "a statutory provision or rule that is limited solely to dismissals for [such a reason]," namely, § 1915(e)(2)(B)(ii). Byrd, 715 F.3d at 126. It did so because it "explicitly and correctly conclud[ed] that the complaint reveals the immunity defense on its face." Ball, 726 F.3d at 463 (footnote omitted). The three unidentified Third Circuit judges (the only persons to be named as defendants in the complaint) were entitled to absolute judicial immunity from monetary damages. The District Court further explained that Millhouse failed to state a cognizable claim with respect to his additional request for injunctive relief (i.e., a transfer out of the federal prison system). According to the District Court, it would be inequitable to grant him an opportunity to file an amended

19

complaint. Noting that a prisoner has no justifiable expectation that he will be incarcerated in a particular prison, the District Court went on to explain that "[t]he complaint clearly fails to state a failure to protect claim." Doe, 2016 WL 727619, at *3. "Milhouse has not alleged any facts from which it could be concluded that prison officials failed to protect him." Id. In fact, the District Court made it clear the complaint did not merely fail to state a claim under Bivens; "it describes neither conduct nor injury that implicates the Constitution or other federal law" (and service of process would thereby constitute a waste of increasingly scarce judicial resources). Id. at *4. "And if Millhouse takes umbrage with the District Court's decision regarding his leave to amend, the appropriate path is to appeal that decision directly (which he has not done)." (Partial Dissent & Concurrence at 7.)

In McLean, the Fourth Circuit's majority opinion considered at some length the question of "whether a dismissal without prejudice for failure to state a claim counts as a strike under § 1915(g)." McLean, 566 F.3d at 394. It held that "it does not." Id. Appellees vigorously contest this holding, and, for our part, we agree with Judge Ambro that most circuits have indicated that such dismissals do qualify as strikes. Orr v. Clements, 688 F.3d 463, 465-66 (8th Cir. 2002); Paul v. Marberry, 658 F.3d 702, 704-06 (7th Cir. 2011); Smith v. Veterans Admin., 636 F.3d 1306, 1313 (10th Cir. 2011); O'Neal, 531 F.3d at 1154-55; Day v. Maynard, 200 F.3d 665, 667 (10th Cir. 1999) (per curiam); see also McLean, 566 F.3d at 402-10 (Shedd, J., concurring in part and dissenting in part). Nevertheless, the Fourth Circuit persuasively disposed of this contrary case law. It noted, for instance, that the Tenth Circuit offered no analysis for its holding. McLean, 566 F.3d at 398 (addressing Day). In O'Neal, the Ninth Circuit (in addition to

20

rejecting the prisoner's theory that his prior actions were not "brought" by him because he merely filed IFP applications that were subsequently denied) concluded that a dismissal without prejudice may constitute a strike because there is nothing in the plain language of § 1915(g) distinguishing between dismissals with and dismissals without prejudice. O'Neal, 531 F.3d at 1154. The McLean approach, however, is based on the actual language of the PLRA. "[It] does not read an additional requirement into the statute that was not already implied by Congress' use of the familiar phrase 'dismissed . . . [for] fail[ure] to state a claim.' An unqualified dismissal for failure to state a claim is presumed to operate with prejudice; the addition of the words 'with prejudice' to modify such a dismissal is simply not necessary." McLean, 566 F.3d at 398-99 (footnote omitted); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 110 (3d Cir. 2002) (noting that PLRA employs language borrowed from Rule 12(b)(6)). The PLRA, although not "a leaky filter," Coleman, 135 S. Ct. at 1764, also does not use "a meat-axe approach" to achieve its goal of stemming the flood of frivolous prisoner litigation and conserving judicial resources, McLean, 566 F.3d at 398.

Furthermore, this Court's own ruling in Ball clearly weighs in favor of McLean. Even Appellees acknowledge that Ball "held that a dismissal based on the affirmative defense of failure to exhaust may be a strike when the applicability of the defense is clear from the face of the complaint and the dismissal is with prejudice." (Appellees' Brief at 19-20.) The Ball Court adopted the same "with prejudice" requirement with respect to dismissals based on the defendant's immunity. See Ball, 726 F.3d at 463 n.20. There would appear to be no real difference between a dismissal for failure to state a claim without prejudice and a dismissal of an unexhausted complaint without prejudice

21

(or a dismissal without prejudice on immunity grounds). In the end, we thereby adopted (and expanded on) the Fourth Circuit's line of reasoning:

> The second part of the rule requires that the dismissal based on failure to exhaust, pursuant to Rule 12(b)(6), be with prejudice. "We assume that Congress is aware of existing law when it passes legislation." Miles v. Apex Marine Corp., [498 U.S. 19, 32 (1990)], and Congress used the language of Rule 12(b)(6) in the PLRA's three strikes provision. See 28 U.S.C. § 1915(g) (strike accrues on dismissal of an action that "fails to state a claim upon which relief may be granted"). A dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be a judgment on the merits unless otherwise specified. See Federated Dep't Stores, Inc. v. Moitie, [452 U.S. 394, 399 n.3 (1981)] ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits." (citation and internal quotation marks omitted)). "It follows that the type of prior dismissal for failure to state a claim contemplated by § 1915(g) is one that constituted an adjudication on the merits and prejudiced the filing of a subsequent complaint with the same allegations." [McLean, 566 F.3d at 396]. By contrast, a dismissal for failure to exhaust without prejudice is not an adjudication on the merits. See Cooter & Gell v. Hartmarx Corp., [496 U.S. 384, 396 (1990)] ("[D]ismissal . . . without prejudice is a dismissal that does not operat[e] as an adjudication upon the merits. . . ."

(alterations in original) (citing and quoting Fed. R. Civ. P. 41(a)(1)) (internal quotation marks omitted)).  Consequently, a dismissal for failure to state a claim on exhaustion grounds without prejudice "does not fall within the plain and unambiguous meaning of § 1915(g)'s unqualified phrase "dismissed . . . [for] fail[ure] to state a claim'" and "does not count as a strike." McLean, 566 F.3d at 397 (alterations in original).  The District Court did not state that any of the dismissals at issue in these appeals were without prejudice, and so they are presumed to be with prejudice, and they "operate[ ] as an adjudication on the merits."  Fed. R. Civ. P. 41(b).

Id. at 460 n.17.

Appellees argue that Heath II constitutes a strike under McLean because the District Court expressly determined that the complaint failed to state a claim upon which relief could be granted, which then acted as an adjudication on the merits when it denied leave to file an amended pleading.  (See also Partial Dissent & Concurrence at 6 (concluding that Heath II is strike because, by dismissing without leave to amend, it effectively barred Millhouse from filing subsequent complaint with same allegations).)    However, the District Court's own order expressly dismissed the complaint without prejudice: "Milhouse's complaint is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)."  Heath, 2015 WL 6501461, at *5.    Even if the District Court may have inadvertently added this "without prejudice" language, it is not appropriate for us to treat a disposition including such

23

ambiguous (or even contradictory) language as a strike or to undertake a detailed analysis to ascertain what the District Court may have really meant to say.  After all, we adopted in Byrd a bright-line rule in deciding what constitutes a strike.  Byrd, 715 F.3d at 126.  While this might mean "that a dismissal intended as a strike will slip through the cracks," the Court will at least limit the likelihood of "more, and perhaps unnecessary, litigation on whether or not a particular dismissal constitutes a strike."  Id.  We also note that prisoners, who typically act pro se, are entitled to take dismissals "at face value" and "should not be required to speculate on the grounds the judge could or even should have based the dismissal on."  Paul, 658 F.3d at 706.

## C.    The District Court's IFP Ruling

Granting the motion to proceed IFP on appeal, we will vacate the District Court's denial of Millhouse's IFP motion and remand for further proceedings.  Appellees concede that, should we grant IFP status and reach the merits of the underlying District Court decision, this decision should be vacated.  With the exception of Bledsoe, the cases cited by the District Court do not constitute strikes under § 1915(g).  See Sage, 639 F. App'x at 793-95.  Millhouse had only one strike when he filed his complaint on August 22, 2014 (and when the District Court denied his motion to proceed IFP on May 4, 2015).

IV.

We grant Millhouse's motion to proceed IFP on appeal. We will vacate the District Court's order denying his IFP motion and remand for further proceedings consistent with this opinion.

24

*Kareem Hassan Millhouse v. Lt. S.I.S. Susan V. Heath, et al.*
No. 15-2278

_____

AMBRO, <u>Circuit Judge</u>, dissenting in part and concurring in the judgment

     I concur with the result set by my colleagues, but I take a different path in getting there.  I do so because I believe that the statutory language, and our comments on it, are clear that an *in forma pauperis* action begins under 28 U.S.C. § 1915 when a court grants the IFP request and not when the appeal is filed.  Because we have not granted that request of Millhouse, we must determine if he has accrued two more strikes since his appeal.  Because he has, he normally would be barred from proceeding with IFP status in this appeal, as he has three strikes that typically forestall filing further claims absent paying full filing fees.  However, I believe our precedent in *Urrutia v. Harrisburg County Police Department*, 91 F.3d 451 (3d Cir. 1996), controls this case and allows us to equitably toll the two strikes that Millhouse has accrued pending our decision as to his IFP request.  Thus, while I disagree with my colleagues' interpretation of the Prisoner Litigation Reform Act ("PLRA") and their conclusion that *Heath II* does not count as a strike, I agree that Millhouse only has one strike for the purpose of this appeal and thus his case should be remanded.

## DISCUSSION

### A.    An IFP Action Commences with the Grant of IFP Status

Section 1915(g) provides

> In no event shall a prisoner *bring* a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more *prior* occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

(emphases added). Millhouse filed his notice of appeal on May 26, 2015 and his request for IFP status on June 15, 2015. His subsequent strikes accrued after those dates when his complaints were dismissed—October 27, 2015 and February 24, 2016. *See Coleman v. Tollefson*, 135 S. Ct. 1759 (2015) (strike accrues at dismissal). So when did Millhouse "bring" this appeal under the meaning of the PLRA? Was it May 26, 2015 when he filed it, or has it not yet begun because we have not granted him IFP status? This consideration sets up how to apply the three-strikes rule, as those strikes must constitute "*prior* occasions . . . that [were] dismissed." 28 U.S.C. § 1915(g) (emphasis added). If May 26, 2015 is the beginning date, the two strikes he has accrued since then cannot apply to bar him IFP status. On the other hand, if this appeal has yet to begin because his request for IFP status is pending, then those two strikes trigger the three-strikes rule.

The answer, I believe, lies in § 1915(a), which creates the right to bring an IFP action. It provides that "any court of the United States may authorize the commencement . . . of any suit, action, or proceeding, . . . or appeal therein, without any prepayment of fees," brought by an indigent prisoner. The "authorize the commencement" language suggests that an IFP action is not "brought" under the PLRA simply by filing

2

a complaint or appeal.  Indeed, we have explained that because

> [o]nly the court may authorize the commencement of any suit without prepayment of fees[,] . . . submitting an *in forma pauperis* complaint to the clerk does not result in commencement of the litigation . . . [because] a determination of whether a prisoner has exceeded the allowable number of frivolous or other inadequate *in forma pauperis* actions will have to be made before the litigation may commence.

*Urrutia*, 91 F.3d at 458 n.13 (alterations and quotations omitted).  We have also indicated in a separate three-strikes case that the prisoner's "action was 'brought' when his motion to proceed *in forma pauperis* was granted." *Gibbs v. Ryan*, 160 F.3d 160, 162 (3d Cir. 1998); *see Oatess v. Sobolevitch*, 914 F.2d 428, 429 n.1 (3d Cir. 1990) ("When a complaint is accompanied by a motion to proceed *in forma pauperis*, rather than by payment of a filing fee, the complaint is not docketed, and it is therefore not filed, until the motion has been granted.").  The reasoning is that an IFP action cannot possibly commence until a court both is able to make an "indigency determination" and screen the applicant's filing history for three-strikes status.  *See Urrutia*, 91 F.3d at 458 n.13; *see also Roman v. Jeffes*, 904 F.2d 192, 194-96 (3d Cir. 1990) (explaining that § 1915 functions as a screening process for IFP applications).  If the IFP applicant passes this initial review as § 1915 requires, the request will be granted, the court will "authorize the commencement" of the suit or appeal, and the action or appeal then will be "brought." To me the statute is clear as to this process.

3

My colleagues believe that an IFP action on appeal begins on filing the notice of appeal. But they hang their hat on § 1915(g), which does not exist in a vacuum. Rather, § 1915(a) is the statute's subsection that establishes the right of an indigent prisoner to avail himself in federal court without paying the requisite filing fee. It details the process of how such a prisoner can claim that right. 28 U.S.C. § 1915(a)(1) and (2) (a prisoner seeking IFP status shall submit "an affidavit that includes a statement of all assets such prisoner possesses . . . [and] the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress," as well as "a certified copy of the trust fund account statement . . . for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal . . . ."). Section 1915(g), on the other hand, merely establishes the three-strikes rule, which is nothing more than a limitation on *who* can claim that right. There is no mention in the statute, and the majority points to none, that the three-strikes rule was intended to eclipse the procedural mandate of § 1915(a).

Subsection 1915(g) serves only to exclude serial filers from IFP-status eligibility, a determination that a court will make and, if favorable to the petitioner, then "authorize" the "commencement" of the IFP action under § 1915(a) if the applicant is not a three-strikes offender. To hold otherwise makes § 1915(g) toothless: its purpose is to screen ineligible IFP applicants. Yet the majority would have a potentially three-strikes-offending prisoner be able to initiate an action before that screening process was complete simply by filing a complaint or a notice of appeal. That is inconsistent with both the purpose of § 1915(g) and Congress's established process in claiming the right under § 1915(a). Per the PLRA,

4

an IFP action begins when a court determines that an indigent prisoner seeking IFP-status is eligible to do so.[1]

### B. Millhouse Has Three Strikes

Thus, given that Millhouse's appeal has yet to commence for IFP purposes because there has been no decision by this Court to grant him IFP status, we next must decide if he has accrued two additional strikes during the pendency of his IFP application.

The first questionable strike relates to the dismissal without prejudice of Millhouse's complaint in *Heath II*. Millhouse claimed there that prison officials had violated his Eighth Amendment rights by housing him with a dangerous cellmate and failing to protect him. Because Millhouse only alleged fear of possible future assault, and because that could not be the basis for relief, the District Court dismissed his complaint without prejudice for failure to state a claim under the PLRA and also dismissed his claims without leave to amend (as amendment would be futile).

Millhouse argues, and the majority holds, that dismissal without prejudice cannot count as a strike under the PLRA. Although most Circuits hold that there is no reason why a dismissal without prejudice should not count as a strike

---

[1] The Majority also relies on the Federal Rules of Appellate Procedure for its misreading of the PLRA. That reasoning is odd, given that the PLRA (in both § 1915(a) and (g)) does not distinguish between when an IFP action can be brought in district court or appealed. They are treated the same, and thus to base a holding on such a reading is out of place. Moreover, the statute, not the Federal Rules of Appellate Procedure, controls.

because § 1915 makes no distinction between dismissals with or without prejudice—*see, e.g., Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011); *Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012); *O'Neal v. Price*, 531 F.3d 1146, 1154 (9th Cir. 2008); *Smith v. Veterans Admin.*, 636 F.3d 1306, 1313 (10th Cir. 2011); *see also Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 463-64 (5th Cir. 1998); *contra McLean v. United States*, 566 F.3d 391 (4th Cir. 2009) (dismissal without prejudice cannot count as a strike)—we need not decide that issue now.

The *Heath II* dismissal without prejudice was also without leave to amend. If dismissal worthy of strike-status under the PLRA must "prejudice[] [the prisoner from] the filing of a subsequent complaint with the same allegations," *McLean*, 566 F.3d at 396, isn't dismissal without leave to amend the functional equivalent of dismissal with prejudice? Millhouse has no further recourse. Thus, although any dismissal under § 1915(e)(2)(B) "is not a dismissal on the merits," here it has "res judicata effect . . . for future *in forma pauperis* petitions." *Denton v. Hernandez*, 504 U.S. 25, 34 (1992).[2] Put more simply, the *Heath II* dismissal effectively barred Millhouse from filing a "subsequent complaint with the same allegations," and it is a strike even under the majority's adoption of *McLean*'s reasoning.

The next questionable strike arises from the dismissal of Millhouse's complaint in *Doe*, in which he filed an action against three unnamed Third Circuit judges for stating in an opinion that Millhouse had confessed to committing a crime and/or cooperated with the Government, and this public

---

[2] *Denton* involved the application of former § 1915(d) of the PLRA, which was amended by Congress and is now currently § 1915(e)(2)(B).

6

exposure threatened his safety in prison. The District Court dismissed with prejudice the complaint for failure to state a claim under the PLRA because the judges were entitled to absolute immunity in the exercise of their official duties. *See* § 1915(e)(2)(B)(ii). It also determined that Millhouse's additional claim for injunctive relief (that he not be housed in the particular prison he was placed) failed to state a claim under the PLRA and dismissed that claim with prejudice. It then denied Millhouse leave to amend his complaint because that was futile.

Millhouse argues that *Doe* was not "correct," and that under a liberal pleading standard he should have the opportunity to amend his complaint to include non-immune defendants. He asserts he would have added the prison officials who allegedly allowed other inmates to access the relevant Third Circuit opinion on the computers in the prison's law library.

This argument goes nowhere. Although immunity is typically an affirmative defense that should be asserted in an answer, dismissal is nonetheless warranted in the PLRA context if the immunity defense is clear on the face of the complaint. *Ball v. Famiglio*, 726 F.3d 448, 463 (3d Cir. 2013). Here the District Court determined from the face of the complaint that the only named defendants were judicial officers sued in their official capacity who are entitled to absolute immunity. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 200 (3d Cir. 2000). And if Millhouse takes umbrage with the District Court's decision regarding his leave to amend, the appropriate path is to appeal that decision directly (which he has not done). *Doe* thus constitutes a strike.

7

Accordingly, *Heath II* and *Doe*, in combination with *Bledsoe* (which we held to be a strike in *Sage*), are three qualifying strikes against Millhouse.

## C.  Equitable Tolling of Millhouse's Strikes

Although Millhouse has three strikes against him, it is overly prejudicial to bar him access to the Court given the particular facts of this appeal.  While the action has not yet begun because we have not granted Millhouse's IFP application, we should consider the date he filed the appeal (or at least the request for IFP status).  The decision to grant or deny an IFP request is made at a court's convenience, and thus substantial delay might ensue.

That is what happened here.  Millhouse filed a notice of appeal and an IFP request in May and June 2015, respectively; the Clerk's Office took no action on the IFP request until it stayed the case five months later in November 2015 (pending the resolution of *Sage*); and two strikes accrued during the Court's delay and mandated stay of the proceedings.  That is, the latter two strikes only accrued for the purposes of this appeal due to our Court's delay.

In *Urrutia* a prisoner filed his IFP request and complaint, no action was taken by the court, and then he sought to amend his complaint to add defendants even though by that time the statute of limitations had run.  91 F.3d 451. We determined that, even though the limitations period ran out, "[t]his was not [his] fault[: h]e submitted his *in forma pauperis* complaint a full two months before the statute of limitations was due to expire."  *Id.* at 458.  Because of "the delay in making a § 1915(d) determination . . . we [held] that, once a plaintiff submits an *in forma pauperis* complaint," the statute of limitations would be equitably tolled until the court grants the IFP application.  *Id.* at 459.  Thus *Urrutia* stands for the principle that, for the purposes of IFP actions, the date

8

they commence can be tolled when the applicant would otherwise be prejudiced.

Other Circuits have taken this approach. *See, e.g., Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010) (in an IFP case regarding overdue service of process, the Court held that "an *in forma pauperis* plaintiff should not be penalized for a delay caused by the court's consideration of his complaint. That delay is solely within the control of the district court." (quotations omitted)); *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 557 n.5 (7th Cir. 1996) (same); *Johnson v. U.S. Postal Serv.*, 861 F.2d 1475, 1485 (10th Cir. 1988) (in a non-prisoner IFP case, holding the "delay encountered while the district court determines a plaintiff's financial eligibility under § 1915, or prepares a statement denying plaintiff's *in forma pauperis* motion, could consume the entire limitations period").

The same outcome should occur here. Had our Court made a prompt (at least within five months) ruling on Millhouse's IFP request or become aware more quickly of the substantial overlap between this case and *Sage*, the question of whether these later strikes apply would not be an issue. Accordingly, we should take the *Urrutia* approach, equitably consider the date of commencement for three-strikes purposes as June 15 (when Millhouse filed his IFP request) due to our Court's delay, and rule that the strikes in *Heath II* and *Doe* do not apply to that request because they did not accrue prior to Millhouse making it.

\* \* \* \* \*

In summary, we should vacate the District Court's dismissal of Millhouse's complaint under § 1915(g). As we determined in *Sage*, the cases that the Court relied on to trigger the three-strikes rule are not actual strikes (with the exception of one, *Bledsoe*). Although I believe Millhouse

9

now has three strikes moving forward, for the reasons noted above I concur with the judgment of the majority.